## Ewalt, Appellant, *v.* Pennsylvania Turnpike Commission.

530

Argued May 25, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*William H. Markus,* with him *Elmer E. Harter, Jr.,* and *Prowell & Harter,* for appellants.

*F. Brewster Wickersham,* with him *Harry C. Pepper* and *Metzger, Wickersham & Knauss,* Counsel for Pennsylvania Turnpike Commission, *Edward L. Springer,* Deputy Attorney General, and *Herbert B. Cohen,* Attorney General, for appellee.

OPINION BY MR. JUSTICE JONES, June 27, 1955:

The plaintiffs, husband and wife, filed their bill in equity in the Court of Common Pleas of Dauphin County against the Pennsylvania Turnpike Commission in an effort to compel the defendant to restore the complainants' property to its condition prior to the defendant's construction of the western extension of the turnpike. The defendant filed a preliminary objection in the nature of a demurrer under Pa. R.C.P. 1017(b)4 to the effect that the Pennsylvania Turnpike Commission, being an instrumentality of the Commonwealth of Pennsylvania, was immune from suit for consequential damages to real estate which is what the complaint embraced. After argument, the court entered a decree sustaining the objection and dismissing the bill at the plaintiffs' costs. This appeal by the plaintiffs followed.

The learned court below impliedly held that the Section of the Western Pennsylvania Turnpike Extension Act of 1941, P.L. 101, 36 PS §654 et seq., which purports to give a right of action to a public or private owner for property damaged or destroyed in the Commission's carrying out of the powers conferred by the Act was unconstitutional, saying that "Since the Turnpike Commission is an instrumentality of the Commonwealth engaged in an essential governmental function, liability for consequential damages may not be im-

posed upon it without notice thereof being given in the title."

The complaint avers the plaintiffs' ownership of property situate on Pearce Mill Road in Pine Township, Allegheny County, containing 10.725 acres more or less and improved with a two-story brick and frame dwelling; that the defendant by resolution of June 14, 1949, condemned a 200 foot right of way with slopes for the construction of the western extension of the turnpike which ran through Pine Township at a distance of approximately 600 feet from the plaintiffs' property; that prior to the time of the defendant's construction of the turnpike extension in Pine Township pursuant to the above-mentioned resolution, there was on the plaintiffs' property a lake, one and three-quarter acres in area, which was fed by the waters of Pine Creek and was well stocked with fish and other aquatic life; that in the construction of the turnpike the defendant made great cuts and fills in the hills and valleys for a distance of several miles both east and west of the intersection of the turnpike and Pearce Mill Road; that such cuts and fills were left exposed with the result that through erosion large quantities of dirt, stones and debris were washed into Pine Creek and carried into the plaintiffs' lake; and that the defendant continues to permit the slopes of the cuts and fills, created in the construction of the turnpike, to be eroded and discharged into the plaintiffs' lake to such an extent that the lake is becoming filled with the eroded earth, stones and debris, and all the fish and aquatic life formerly in the lake have been killed by the defendant's failure to maintain and operate the turnpike properly.

The complaint further sets forth that the defendant's conduct in permitting the earth and dirt of the slopes of the highway to be discharged into Pine Creek

and onto the plaintiffs' property is a continuing trespass and that the plaintiffs are without an adequate remedy at law. Wherefore, they prayed equitable relief as follows: (1) that the defendant be required to remove from the plaintiffs' property all earth and dirt deposited there as a result of the defendant's construction and maintenance of the western extension of the turnpike; (2) that the defendant be required to contain all discharge of earth and dirt from the banks and slopes of the cuts and fills of the turnpike so that such material cannot wash onto the plaintiffs' property; (3) that the defendant be required to remove such earth, silt and dirt from the plaintiffs' lake as has been deposited there through the defendant's failure to contain the slopes of the turnpike within their bounds and to restore the plaintiffs' lake to the condition in which it was prior to the defendant's stated trespass; and (4) that the defendant be required to restock the plaintiffs' lake with fish and aquatic life comparable to that existing prior to the time of the defendant's construction of the turnpike extension.

The legal conclusions upon which the court below based its decision were for the most part correct. But, there was crucial error in the court's treatment of the right of action conferred by the Western Pennsylvania Turnpike Extension Act of 1941, supra, on persons whose property was damaged or destroyed by the construction, maintenance or operation of the turnpike.

That the damages whereof the plaintiffs complain are consequential and not direct is clear. Contrary to the plaintiffs' contention, there was no *taking* of their property. Nor did the defendant make entry thereon within the legal significance of that term. And, when property is not actually taken or entered but an injury to it occurs as the natural result of an act lawfully done by another, the damages are consequential: *Sol-*

*diers and Sailors Memorial Bridge,* 308 Pa. 487, 490, 162 A. 309. Here, the averments of the plaintiffs' complaint, which must be taken as true for present purposes, show an injury to the plaintiffs' property occurring as the natural result of the defendant's lawful actions.

It is also true that Article XVI, Section 8 of the Pennsylvania Constitution, which imposes on municipal and other corporations and individuals invested with the power of eminent domain liability for consequential damages occasioned by an exercise of the power, has no application to the Commonwealth. Nor is there any general legislation imposing such a liability on the Commonwealth. In *Heil v. Allegheny County,* 330 Pa. 449, 453, 199 A. 341, it was said that,—"To support a recovery of damages from the Commonwealth in cases where property is not actually taken by it, there must be an act of the legislature expressly imposing such liability." See, also, *Brewer v. Commonwealth,* 345 Pa. 144, 145, 27 A. 2d 53. By like token "When the Commonwealth exercises its right of eminent domain and injures but does not take property, it is not required to compensate for the consequential injury": *Pennsylvania Company for Insurances on Lives and Granting Annuities, Trustee, v. Philadelphia,* 351 Pa. 214, 217, 40 A. 2d 461. It was further recognized in *Koontz v. Commonwealth,* 364 Pa. 145, 147, 70 A. 2d 308, that ". . . a trespass outside the right of way, condemned for the highway purpose, is not a compensable element of damage in a proceeding for the ascertainment of damages due to the Commonwealth's exercise of its power of eminent domain (*Culver v. Commonwealth,* 346 Pa. 262, 264-265, 29 A. 2d 531)."

On the basis of the foregoing, the appellee contends that the Commonwealth's immunity from liability for damages due to injuries such as are pleaded by the

plaintiffs also attends the Commission since Section 4 of the Turnpike Act of May 21, 1937, P.L. 774, 36 PS §652 (d), constitutes the Commission an instrumentality of the Commonwealth and Section 5 of the Western Pennsylvania Turnpike Extension Act of 1941, supra, declares that the Commission's exercise of the powers conferred by that Act in the construction, operation and maintenance of the turnpike shall be deemed and held to be an essential governmental function of the Commonwealth. The immunity which the appellee thus imputes to itself may be conceded. But, that does not solve the problem which this record presents. This is not a case of injury due to an exercise of the Commission's power of eminent domain. The injury here pleaded is a continuing trespass arising out of the Commission's construction, operation and maintenance of the turnpike.

Section 6(k) of the Western Pennsylvania Turnpike Extension Act of 1941, supra, declares that "All public or private property damaged or destroyed in carrying out the powers granted by this act shall be restored or repaired and placed in their original condition as nearly as practicable or adequate compensation made therefor out of funds provided under the authority of this act." Among the powers which the Commission is expressly authorized by the Act to carry out are the construction, operation and maintenance of the turnpike: Section 2. It follows, therefore, that the plaintiffs have a right of action against the Commission for the alleged damage and destruction of their property.

The learned court below held that such a right of action did not exist because the title to the Act did not contain any notice of the right. With that conclusion, we are unable to agree. The title states that the Act is to provide for the construction, operation and main-

tenance of a turnpike between certain designated termini, to confer powers and impose duties on the Turnpike Commission and to provide for the collection of tolls for the payment, inter alia, of the cost of maintenance, operation and repair of the turnpike. Manifestly, the title was sufficient to embrace the provision of the Act which imposes a duty upon the Commission to restore property of others consequentially damaged or destroyed by the Commission's construction, operation or maintenance of the turnpike or pay adequate compensation therefor.

The injunction of Article III, Section 3 of our State Constitution that "No bill . . . shall be passed containing more than one subject, which shall be clearly expressed in its title," does not require that the title to an Act be an index or synopsis of its contents: *Commonwealth v. American Gas Company*, 352 Pa. 113, 118-119, 42 A. 2d 161; *Poor District Case (No. 1)*, 329 Pa. 390, 399-402, 197 A. 334; *Gilbert's Estate*, 227 Pa. 648, 650, 76 A. 428. The purpose of the constitutional requirement is that the title shall give notice of the subject dealt with so that a reasonably inquiring state of mind would lead one to examine the body of the Act: see *Kelley v. Earle*, 325 Pa. 337, 353-354, 190 A. 140. It was there said that "We have had this Article and Section before us so often that it is scarcely necessary to discuss the subject at length." What Mr. Justice STERN said for this court in *McSorley v. Fitzgerald*, 359 Pa. 264, 272, 59 A. 2d 142, is apposite here,—"As is not unusual in attempts to establish that a statute is unconstitutional, the final assault is made on the title of the Act, it being claimed that Article III, section 3 of the Constitution is violated because the subject-matter of the statute is not clearly expressed in the title . . . . It is elementary, however, that the title of an act need not, in order to comply with the constitutional require-

ment, be an index of its provisions or a synopsis of its contents; so long as it indicates the general subject to which all the provisions of the act are incidental or germane, it is sufficient: [citing cases]."

The decree of the court below is reversed with a procedendo at the costs of the appellee.