**EASTERN MOTOR EXPRESS, Inc.**

v.

**Frances ESPENSHADE, Administratrix of the Estate of Penrose Espenshade, Deceased**

**and**

**Pennsylvania Turnpike Commission.**

Civ. A. No. 18206.

United States District Court
E. D. Pennsylvania.

Jan. 10, 1956.

Richter, Lord & Farage, Philadelphia, Pa., for plaintiff.

John J. McDevitt, III, Philadelphia, Pa., for plaintiff Frances Espenshade.

Charles A. Wolfe, C. Brewster Rhoads, Philadelphia, Pa., for defendant.

LORD, District Judge.

This case is before the Court on defendants' motions to dismiss, claiming:

1. Lack of jurisdiction;

2. Failure to state a cause of action; and

3. Improper venue.

We shall discuss the issues in that order.

Plaintiff seeks to recover from defendants damages alleged to have been sustained to its tractor-trailer as a result of an accident on January 7, 1953 on the Pennsylvania Turnpike.

Plaintiff owned a tractor-trailer which collided with a vehicle owned by the defendant, Pennsylvania Turnpike Commission (hereinafter referred to as "Commission"), and operated by decedent, Penrose Espenshade, an employee

of the Commission. Frances Espenshade, the other defendant, his widow, was appointed administratrix of decedent's estate. Plaintiff is a corporation organized and existing by virtue of the laws of the State of Indiana.

1. The Commission has filed its motion to dismiss the complaint on the grounds of lack of jurisdiction. The basis of the motion is the Commission is designated an instrumentality of the Commonwealth by the act creating it, Act of May 16, 1940, P.L. (1941) 949, 36 P.S.Pa. § 653 et seq.; as such an instrumentality of the Commonwealth it is not subject to suits against it without its consent by virtue of the Eleventh Amendment to the Constitution of the United States; and that it has consented to be sued only in the proper courts in Dauphin County in the Commonwealth, 36 P.S. § 653e(c).

This same problem was before the Federal Courts for the first time in the case of Hunkin-Conkey Const. Co. v. Pennsylvania Turnpike Commission, D.C. M.D.Pa.1940, 34 F.Supp. 26. The court in that case concluded that the Commission is a separate and distinct legal entity and not an agency or department of the Commonwealth of Pennsylvania. In reaching this conclusion, the court considered the extensive grants of powers given to the Commission by the act which created it, saying at page 29:

"The Pennsylvania Turnpike Commission has been given the power to create a fund through the pledging of its own credit to defray all and any expenses which it might incur, and the State has expressly denied its own financial responsibility in the undertaking. Furthermore, the Commission has been given the power to act through its own agents, subject only to supervision by the State in a few matters. In addition, the Pennsylvania State Highway Commission, an agency of the State, existed at the time of the creation of the defendant Commission, and was qualified to carry out the duties of the defendant Commission. The

fact that it was not designated to do so lends support to the contention that the Commonwealth of Pennsylvania desired to create an entity distinct and apart from itself for the purpose of constructing the turnpike."

The same precise issue was again raised by the Commission in the case of Darby v. L. G. De Felice & Son, Inc., D.C. E.D.Pa.1950, 94 F.Supp. 535. In that motion to dismiss, the Commission again claimed it was an instrumentality of the Commonwealth of Pennsylvania. The court overruled that contention, at page 538:

"In conclusion, we hold that the Pennsylvania Turnpike Commission is a separate and distinct legal entity and is subject to suit in this Court. * * *"

The same result was also reached in the case of Lowes v. Pennsylvania Turnpike Commission, D.C.M.D.Pa.1954, 125 F.Supp. 681. The court denied the Commission's motion, citing the Hunkin-Conkey and Darby cases, supra, saying, at page 685:

"There is nothing in the relationship of the Pennsylvania Turnpike Commission to the State to remove it from that group of public corporations and political subdivisions which are not clothed with the immunity from suit which belongs to the State alone."

Further, in Guaranty Trust Co. of New York v. West Virginia Turnpike Commission, D.C.S.D.W.Va.1952, 109 F.Supp. 286, the court compared the Act creating the West Virginia Turnpike with the Act creating the Pennsylvania Turnpike. In comparing the Acts, the court stated, at page 292:

"It is true that the act creating the Turnpike Commission contains the statement that it is constituted an agency of the State, and that the exercise of its powers shall be deemed and held to be an essential governmental function of the State. But the same was true of the Penn-

sylvania Turnpike Commission; yet it was held in the case of Hunkin-Conkey Construction Co. v. Pennsylvania Turnpike Commission, D.C. Pa., 34 F.Supp. 26, that such a statement by the Legislature is not conclusive upon a federal court, but that the nature and attributes of the Commission should be examined and appraised in order to determine its true character. This principle was followed and approved in the case of Darby v. L. G. De Felice & Son, D.C. Pa., 94 F.Supp. 535. I agree with the reasoning of these two cases. * * * "

The Commission has been held to be a separate legal entity, distinct from the Commonwealth in the case of Pennsylvania Turnpike Commission v. Baldwin Bros., 1942, 44 Pa.Dist. & Co.R. 462.

A like result was reached in the case of Brenner v. Pennsylvania Turnpike Commission, 1942, 45 Pa.Dist. & Co.R. 124, at page 126, where the court said:

"The Act of May 21, 1937, P.L. 774 [36 P.S.Pa. § 652a et seq.], by which the Turnpike Commission was created, provides, inter alia, in section 4, that 'The Commission is hereby constituted an instrumentality of the Commonwealth * * *' In spite of this provision, we do not feel that the Turnpike Commission is the Commonwealth, nor an integral part of it. The Act of 1937, supra, provides that the credit of the Commonwealth is not extended to the commission and that no action on the part of the commission shall impose any liability upon the Commonwealth; no funds of the Commonwealth are to be used for turnpike purposes, except such as were loaned by the Department of Highways for preliminary surveys, which loans were to be repaid to that department. The salaries of the commissioners must be paid from proceeds of the turnpike revenue bonds or from the tolls collected in the operation of the turnpike. None of the receipts of the commission go to the Commonwealth at any time, and, on the other hand, all receipts from tolls or other sources must be used to pay the costs of operation and the revenue bonds issued; and when the latter are fully paid the turnpike becomes a free road, to be maintained at the expense of the Commonwealth. It is apparent, therefore, that the legislature created a corporation or entity which is entirely separate and apart from the Commonwealth and not an integral part of it * * * "

■ The Commission also contends that even if this Court should determine that the Commission does not share the same immunity as the Commonwealth of Pennsylvania, it has consented to be sued only in the proper courts in Dauphin County in the Commonwealth of Pennsylvania, 36 P.S. § 653e(c). This Court does not agree with that contention. A state is without authority to deprive the federal courts of jurisdiction acquired by virtue of the Federal Constitution. Louisiana Highway Commission v. Farnsworth, 5 Cir., 1935, 74 F.2d 910. See Barber Asphalt Paving Co. v. Morris, 8 Cir., 1904, 132 F. 945 at page 949, 67 L.R.A. 761, wherein the court stated:

"The jurisdiction of the federal courts is granted to them by the Constitution and laws of the United States, and no state legislation may impair, restrict, or destroy it."

■ Accordingly, the Court is of the opinion that the Commission is a separate entity, distinct from the Commonwealth of Pennsylvania, not clothed with any immunity, and this Court has jurisdiction.

2. The second contention advanced by the Commission in support of its motion to dismiss is that the complaint fails to state a claim for which relief can be granted; and that the Commission is not liable for torts of its employees under the doctrine of respondeat superior, because the function of the Commission is purely governmental.

■ There are no Pennsylvania appellate court decisions involving the tort lia-

bility of the Commission for the negligence of its employees. Therefore, this Court is justified in making its own determination as to what the appellate courts of Pennsylvania would probably rule in a similar case. King v. Order of United Commercial Travelers of America, 1948, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608; Berkshire Land Co. v. Federal Security Co., 3 Cir., 1952, 199 F.2d 438.

The Commission has called the Court's attention to three lower court decisions in which it was held not liable. This was on the theory that it was engaged in the performance of a governmental function and not liable for the torts of its agents or employees under the doctrine of respondeat superior. House v. Pennsylvania Turnpike Commission, 1942, 45 Pa.Dist. & Co.R. 677; Malpica v. Pennsylvania Turnpike Commission, 1953, 65 Dauph. Co. 302; and James V. Caputo v. Pennsylvania Turnpike Commission, County Court of Allegheny County, No. 2696 of 1955. However, in the case of Ewalt v. Pennsylvania Turnpike Commission, 1955, 382 Pa. 529, 115 A.2d 729, 732, the court held that the Commission was liable for damage to property caused by its agents resulting in a "trespass arising out of the Commission's construction, operation and maintenance of the turnpike".

Furthermore, we have heretofore concluded that the Commission is a distinct entity and not an instrumentality of the Commonwealth engaged in a governmental function.

The underlying test in distinguishing governmental functions from corporate functions, and consequently, in determining the liability or non-liability for the torts of agents, is, whether the act performed is for the common good of all, that is, for the public good, or whether it is for the special benefit or profit of the corporate entity.[1]

Applying that test to the facts in this case, we must consider the nature of the services rendered by the Commission. The purpose of the Commission is to provide a high speed super highway which it must maintain in good order and repair. Because of the nature of its construction, the speed limit is much higher than that allowed on the ordinary State highways. There is no congestion of traffic. For these conveniences, the Commission collects a toll, which is determined by the number of miles traveled, and in the case of large trucks, in addition, the weight of the vehicle. From the tolls collected, the Commission is authorized to pay all expenses of construction, maintenance, and operation of the turnpike. The bonds authorized to be issued are payable exclusively from tolls. Funds received from any bonds issued are applied to the construction and cost of the turnpike.

The act of the employee, which is claimed to be negligent, was being performed in maintaining the turnpike. This act was for the *special benefit or profit of the Commission*, for, if the turnpike is not kept in repair, fewer motorists would use it and the result would be a loss of revenue.

Accordingly, the complaint states a cause of action for which relief can be granted.

3. Both defendants advance the final contention that the motions to dismiss should be granted because the venue of the action is not properly laid in this district. We shall first determine whether the venue is proper for the Commission.

The jurisdiction of the Court is based on diversity of citizenship. The situs of suit or venue is controlled by the provisions of Sec. 1391(a) and (c), 28 U.S.C.A. as follows:

"(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be

1. For many cases in which the above test has been used, see 25 L.R.A.,N.S., 88 (1909); 57 A.L.R. 419 (1928); 64 A.L. R. 1545 (1929); 89 A.L.R. 394 (1933); 114 A.L.R. 428 (1937); 120 A.L.R. 1376 (1939).

brought only in the judicial district where all plaintiffs or all defendants reside."

"(c) *A corporation* may be sued in any judicial district in which it is incorporated or licensed to do business or *is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.*" (Emphasis supplied.)

The complaint has been amended to allege that the plaintiff, an Indiana corporation, has an office and does business in the Eastern District of Pennsylvania. The Commission contends that the venue of the action is improper, even though the plaintiff is doing business in this district.

In support of this contention, the Commission relies upon the case of Chicago & Northwestern Ry. Co. v. Davenport, D.C.S.D.Iowa 1950, 94 F.Supp. 83, 84, in which the court held that the language used, Sec. 1391(c), supra, " ' * * * and such judicial district shall be regarded as the residence of such corporation for venue purposes' " applies only to a defendant corporation and not to a plaintiff corporation. It also cites the case of United Merchants & Manufacturers, Inc., v. United States, D.C.M.D.Ga. 1954, 123 F.Supp. 435. However, in that case the court found it unnecessary to decide whether Sec. 1391(c) permitted a corporation to sue as a plaintiff.

On the other hand, plaintiff cites the case of Freiday v. Cowdin, D.C.S.D.N.Y. 1949, 83 F.Supp. 516, appeal dismissed 2 Cir., 1949, 177 F.2d 1020. There the court held that the above quoted clause of Sec. 1391(c) makes it proper to lay venue in the district where a plaintiff corporation is doing business as well as a defendant corporation.

The Freiday case, supra, was cited with approval in Hadden v. Barrow, Wade, Guthrie & Co., D.C.N.D.Ohio 1952, 105 F.Supp. 530 at page 531, where the court said:

"This Court finds itself in accord with the result reached in Freiday v. Cowdin, supra. It would be purposeless to engage in a lengthy discussion of semantics or to belabor unreasonably the meaning of words. It is sufficient to say that, had the framers of the statute intended to confine venue to *defendant* corporations, the language 'and such judicial district shall be regarded as the residence of such corporation for venue purposes' would be meaningless and redundant in the face of the clear, expressive and unambiguous wording which precedes it. If any other result was intended, the remedy lies in legislative amendment, rather than in faulty judicial construction."

This position was upheld in the recent case of Southern Paperboard Corporation v. United States, D.C.S.D.N.Y. 1955, 127 F.Supp. 649, at page 650, where the court said:

"I therefore conclude that under section 1391(c) a district where a corporation is licensed to do business or is doing business is the proper venue for an action brought by the corporation as well as for an action brought against the corporation. * * * "

█ We adopt this view and hold that the plaintiff corporation is doing business in this district, is a "resident" for the purposes of venue and the action was properly instituted here.

However, the Commission further argues it is not incorporated and, therefore, is not within the provisions of section (c).

However, in the Hunkin-Conkey case, supra, the court said, 34 F.Supp. at page 28:

"The fact that the Commission is not a corporation does not make it any less a distinct legal entity. It is an unincorporated association, sometimes called a quasi corporation, with power to sue and be sued in its own name * * *."

Venue provisions of the Code have been extended to suits against partner-

ships and unincorporated associations. Darby v. Philadelphia Transportation Co., D.C.E.D.Pa.1947, 73 F.Supp. 522. As was stated by Judge Hand in Sperry Products v. Association of American Railroads, 2 Cir., 1942, 132 F.2d 408, at pages 411–412, 145 A.L.R. 694:

" * * * Thus, for most purposes the law still looks at such associations as mere aggregations of individuals. Since, however, for the purpose of suit it has come to regard them as jural entities, we can see no reason why that doctrine should not be applied consistently to other procedural incidents than service of process, and venue is one of such incidents. Certainly that promotes simplicity, and simplicity was one of the conveniences which induced the original change. * * *

" * * * It does not violate common understanding to think of a common venture or enterprise as having spatial position wherever any part of those activities take place by which it is realized. That is a practicable test and it is really the only practicable test. To say that it exists wherever any of its members are is plainly untenable, for they all have their individual activities which are altogether alien to the enterprise. To say that the enterprise exists wherever and whenever any of the members think about it would be childish. There remains, so far as we can see, only what we have suggested; *and we hold that the defendant Association was present wherever any substantial part of its activities were continuously carried on.* * * * (Emphasis supplied.)

" * * * If so, the same test must apply to an unincorporated association with the added limitation that as to it no state of incorporation exists to disturb the test in application. For these reasons we think that if a patentee chooses to sue an unincorporated association under the doctrine of United Mine Work-

ers [of America] v. Coronado Coal Co., supra, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762, he must do so either at its principal place of business, or at any of the regular and established places of its business where it may have infringed."

Or as Judge Frank (concurring) said, at page 412:

" * * * I think we should, therefore, hold that the Association here is an inhabitant of, and can be sued in, the Southern District of New York, if that is *one* of its principal places of doing business."

■ This Court is of the opinion that the Commission should be considered as an unincorporated association and a jural entity with regard to venue.

■ The problem as to whether the Commission is engaged in business in the Eastern District of Pennsylvania would appear to be beyond dispute. The Commission maintains toll houses for the collection of tolls in this district. The Commission's road has been extended with interchanges in Conshohocken, Norristown, etc. The Commission provides the same services in this district that it extends to motorists in the middle and western districts. Since the Commission is actually doing business in the Eastern District of Pennsylvania, venue is properly laid as to it.

In determining whether or not the venue is proper as to the defendant, Frances Espenshade, a resident of the Western District of Pennsylvania, we need only refer to 28 U.S.C.A. § 1392(a) which provides:

"Any civil action, not of a local nature, against defendants residing in different districts in the same State, may be brought in any of such districts."

■ This section is controlling since the present case involves a civil action not of a local nature against defendants residing in different districts. In any event, having determined that the *plain-*

*tiff* is doing business in this district and has a "residence" here for venue purposes, the action was proper, 28 U.S.C.A. § 1391(a).

Inasmuch as we have determined that the venue is proper as to the Pennsylvania Turnpike Commission, the defendant, Frances Espenshade, cannot complain that the venue is improper as to her. Keller-Dorian Colorfilm Corp. v. Eastman Kodak Co., D.C.D.N.Y.1949, 88 F.Supp. 863; Jones v. Fox Film Corp., 5 Cir., 1934, 68 F.2d 116.

Since we are of the opinion that this Court has jurisdiction; that the complaint states a good cause of action; and that there is proper venue; it is hereby ordered that the Defendants' Motions to Dismiss be and the same are hereby denied.