## Espenshade Condemnation

*F. Brewster Wickersham*, for exceptant.
*David M. Wallace*, for claimant.

SOHN, J., May 7, 1956.—We have for consideration exceptions filed by the Pennsylvania Turnpike Com-

mission to an award of viewers filed on January 31, 1955.

The Pennsylvania Turnpike Commission, an instrumentality of the Commonwealth of Pennsylvania, created by the Act of May 21, 1937, P. L. 774, 36 PS §652d, was authorized by the Pennsylvania Turnpike Philadelphia Extension Act of May 16, 1940, P. L. 949, 36 PS §653a, to construct, operate and maintain a turnpike from a point at or near Middlesex in Cumberland County to a point at the City of Philadelphia. Under the provisions of the latter act, the commission condemned certain real estate of Ada E. Espenshade, situate in Lower Swatara Township, Dauphin County, by resolution dated April 12, 1948.

Upon the petition of Ada E. Espenshade to the Court of Common Pleas of Dauphin County, on April 9, 1954, to the above number and term, the court on April 26, 1954, appointed viewers, as provided in said recited act of assembly, to ascertain as accurately as may be the value of such land, property rights, rights of way, easements or franchises, and to prepare a full report of their labors, and thereafter to carry out their further duties as viewers, as set forth in said recited act of assembly.

As provided in their appointment, the viewers met upon the premises and later, on two other occasions, met and took testimony. This testimony was offered as to the ownership, quantity, quality and value of the land condemned, of the land actually occupied by the turnpike, and of the land severed and made inaccessible, and as to all resulting damages by reason of the condemnation.

On January 31, 1955, the viewers filed their report, in which they found that the said turnpike commission had laid out said turnpike over and across certain lands of Ada E. Espenshade, claimant, taking 8¼ acres in fee simple, and severing from the whole, 22

acres, more or less, which severed land has become inaccessible to the landowner unless a right of way is acquired over the land of others. In paragraph 5 of their report, the viewers, after taking into consideration all the matters as provided by law, estimated and determined the damages due and payable by the turnpike commission to claimant, in consequence of the appropriation of the land, the land severed and all consequential damages resulting therefrom, including damage for delay in payment, in the sum of $12,000.

The turnpike commission's exceptions to the report of the viewers are as follows:

1. The viewers erred in awarding damages, consequential or otherwise, for the 22 severed acre tract of land not actually taken, which award is illegal or improperly made, or both.

2. The viewers erred in awarding damages for delay since there is no finding of fact in support thereof.

3. The viewers' award is excessive if any or all of the above exceptions should be sustained.

In approaching our final consideration of the questions confronting us, the court must consider that exceptions to viewers' reports, unlike appeals therefrom, are properly limited to procedural matters or questions of law basic to the inquiry: Lakewood Memorial Gardens, Inc. Appeal, 381 Pa. 46, at page 51, 112 A. 2d 135 (1955), and the various cases cited therein.

The first exception filed has to do with the 22 acres of land not actually occupied by the turnpike or taken in fee, but which the testimony shows has been severed from the owner's farm and made entirely inaccessible to the landowner. The contention of the turnpike commission is that it is not liable for any damage, consequential or otherwise, for the 22-acre severed tract,

because it was not actually taken. The turnpike's interpretation of a taking seems to be that such severed tract was not actually condemned, used or reduced to possession of the turnpike commission, and that consequently there was no taking. We cannot agree with this position. The testimony and the plans show that by the construction of the turnpike, the turnpike commission has just as effectually and realistically taken from claimant the 22 severed and inaccessible acres, by the erection of a complete and permanent barrier against her admission to such tract, as it has taken of the 8¼ acres of her land upon which it has built its turnpike, barriers and fences. We cannot overlook section 6(k) of the Pennsylvania Turnpike Philadelphia Extension Act which provides:

"All public or private property damaged or destroyed in carrying out the powers granted by this act shall be restored or repaired and placed in their · original condition, as nearly as practicable, *or adequate compensation made therefor* out of funds provided under the authority of this act." (Italics supplied.)

This particular section clearly requires the turnpike commission, if it cannot restore or place claimant's property to its original condition as nearly as practicable, to pay adequate compensation for all property damaged or destroyed. This section clearly indicates also that the turnpike commission not only need pay for the land condemned, taken and occupied by it, but for all damages which are suffered as a consequence of the taking and which cannot be compensated except through a money payment. The testimony clearly shows that there has been a complete severance and a permanent blockade of claimant's ingress and egress to the 22 severed acres. The existing private lane, which formerly gave her access to this ground, which led from the farm buildings to the area now occupied by the turnpike, to land south of and beyond the turn-

pike, has been completely sealed off, and all other possible access to the land south of and beyond the turnpike is likewise blocked.

Section 9 of the Pennsylvania Turnpike Philadelphia Extension Act requires the board of viewers "to ascertain, as accurately as may be, the value of such land, property rights, rights of way, easements or franchises" and having done so, to prepare a full report of their labors. This has been done in this case. In the concluding paragraph of the viewers' report, in accordance with standard practice, they determine the damages due claimant for the appropriation, severance, consequence and delay, in order to demonstrate to the court, and to the parties to the controversy, that all possible compensable matters have been considered, and precluding claimant from asserting that the report omitted any element of compensable damage. Our attention has been called to the condemnation of land of the Highspire Cemetery Association, filed to no. 227, March term, 1954, in this court. We have examined the viewers' report in that case and find that in its concluding paragraph, the viewers used the identical and comprehensive language used in the viewers' report in the case at bar. The turnpike commission took no exception to this language and paid the award.

We also believe that in reaching a conclusion here, the provisions of the act must be liberally construed, in order to effect the purposes of the act. Section 19 provides that the provisions of the act "shall be deemed to provide an additional and alternative method for the doing of the things authorized thereby and shall be regarded as supplemental and additional to powers conferred by other laws and shall not be regarded as in derogation of any powers now existing. Such sections, being necessary for the welfare of the Commonwealth and its inhabitants, *shall be liberally construed to effect the purposes thereof*". (Italics supplied.)

The title of the Pennsylvania Turnpike Philadelphia Extension Act, among other things, provides "for the construction, operation and maintenance of a turnpike" and also for "conferring powers and imposing duties on the Pennsylvania Turnpike Commission" and "providing for condemnation". In arriving at a decision in the case at bar, we must consider the case of Ewalt v. Pennsylvania Turnpike Commission, 382 Pa. 529, 115 A. 2d 729 (1955). This decision, we feel, is particularly significant when one has in mind the provisions of section 6(k) of the Pennsylvania Turnpike Philadelphia Extension Act. In the Ewalt case, the Supreme Court held that the title of the Western Pennsylvania Turnpike Extension Act, which contains the same provisions as the Pennsylvania Turnpike Philadelphia Extension Act, was sufficient notice of its provisions, and on page 535 says:

". . . It follows, therefore, that the plaintiffs have a right of action against the Commission for the alleged damage and destruction of their property."

This case was in equity, but we feel that the same legal propositions are applicable in the case at bar. In the Ewalt case, plaintiffs were owners of land which was 600 feet removed from the turnpike constructed by the commission. None of their land was taken. They sought relief from the turnpike commission's permitting cuts and fills to be exposed and eroded, causing dirt to be washed into a creek and carried into plaintiffs' lake, causing it to become filled with eroded earth, etc., and killing their fish and aquatic life. The Ewalt case holds that although no. land of plaintiffs was actually taken, and although the damage was consequential, the injury to plaintiffs' property occurred *as a natural result of the commission's action.* The court held that the injuries were a continuing trespass arising out of the commission's construction, operation

and maintenance of its turnpike. On page 536, we find this language in the opinion:

". . . Manifestly, the title was sufficient to embrace the provision of the Act which imposes a duty upon the Commission to restore property of others consequently damaged or destroyed by the Commission's construction, operation or maintenance of the turnpike *or pay adequate compensation therefor*." (Italics supplied.)

We are well aware that in the case of Soldiers and Sailors Memorial Bridge, 308 Pa. 487, and various other like cases, it has been held that consequential damages are not compensable where they follow a construction which does not result in any property being actually taken or destroyed, but where an injury to it occurs as a natural result of an act lawfully done by another, and that the Commonwealth is not liable for consequential damages in such a situation. However, in the instant case, part of claimant's property was taken, damaged and destroyed, within the purview of the act which we are now considering. The rule is entirely different where consequential damages accompany an actual taking. In Zeller v. Pennsylvania Turnpike Commission (No. 2), 3 D. & C. 2d 536 (1955), we find a very recent case dealing with consequential damages. Plaintiff, Zeller, did not own any of the land taken by the turnpike commission. The commission condemned some of 162 acres in Lancaster County owned by Charles E. May and wife, which resulted in cutting off Zeller's access to 80 acres of standing timber which Zeller, under agreement with May, had the right to cut and remove. On appeal from a viewers' award, the jury rendered a verdict for plaintiff in a lesser sum for the reason that the timber is still standing and can be cut or removed and it was not shown that there was no access. The point is,

however, that plaintiff recovered for interference with his access even though he owned none of the land. In the instant case, the owner's own access was completely severed and made completely inaccessible.

In Allison v. Bigelow, 68 Pa. Superior Ct. 219 (1917), the highway commissioner, in the exercise of the powers conferred upon him by the State Highway Act of May 31, 1911, P. L. 468, in the construction of a State highway, took a portion of the owner's land and also cut off from the main portion of the farm and its buildings a considerable acreage of land. The jury in that case, in its verdict, separately found the value of the land actually taken and also the damage to the land cut off, although still accessible and usable to the owner by crossing the highway. The Attorney General urged that the owner was confined to such damages as would represent the value of the land actually taken and that the jury could go no further. The court held that under the act, similar in its provisions concerning damages and appointment of viewers to ascertain and assess such damages to the provisions of the Pennsylvania Turnpike Philadelphia Extension Act, there was a clear evidence of an intention that the State should pay consequential damages resulting from injuries to, or the destruction of property. On appeal by the highway commissioner, the Superior Court held that the owner was entitled to damages for the inconvenience, as well as the actual taking, and in conclusion the court said:

". . . There is certainly nothing in the letter or spirit of the Constitution to prohibit a legislative enactment that the State itself, in the construction of great public improvements for the benefit of the people at large, should not respond to the same liability as is imposed upon the great municipalities of the Commonwealth through whose agency the government of the State is largely exercised. We cannot perceive any

sound reason why the meaning of the language of the act is changed because the State itself, through one of its departments, is building the road. That portion of the machinery of the government designated as the Highway Department is but one of the many servants the people of the State must employ in order that the work of government may be carried on as they desire to have it done."

The Pennsylvania Turnpike Philadelphia Extension Act, by its title and by its provisions, is sufficient, and contains appropriate statutory authority to impose upon the turnpike commission liability for claimant's consequential damages to the 22 acres cut off and destroyed.

The turnpike commission's second exception would deny "damages for delay in payment". The resolution of condemnation was adopted April 12, 1948, and by stipulation in the record that date is the date of taking in these proceedings. At that time Christian C. Espenshade and Ada E. Espenshade, his wife, were the owners of the premises. In September of 1949, the turnpike commission tendered its bond to Christian C. Espenshade, as sole obligee. Christian C. Espenshade died October 30, 1950. The testimony shows that only Christian C. Espenshade had any conversations or negotiations with the turnpike commission's representative up until the time of his death. Thereafter, not until March 3, 1954, did the turnpike commission's representative address a notice to Mr. and Mrs. Christian C. Espenshade that the sum therein mentioned was the final offer of the Pennsylvania Turnpike Commission. From the time of Mr. Espenshade's death until the final offer of the turnpike commission, when an unidentified representative of the turnpike commission called upon Mrs. Espenshade, who at the death of her husband became the sole owner by survivorship, of the premises, Mrs. Espenshade

declared she wanted to be treated like other owners of land affected by the turnpike. The notes of testimony show that from the time of Mr. Espenshade's death in 1950 to the date of the turnpike commission's letter in 1954, the turnpike commission never made any offer. When Mrs. Espenshade said she wanted to be treated like the rest, she meant like the others named, and all of them around there stated that the commission's offer to her was not at all comparable to what her neighbors, whose lands were taken, received. On cross-examination of Mrs. Espenshade, she was asked what the turnpike commission offered her in March of 1954, and over her counsel's objection, the viewers received the amount of that offer. Robert Lee Jacobs, Esq., who presided at the hearing, stated:

"It is received without prejudice as to the amount of damages. It is in my opinion immaterial. However, it goes to show whether or not the offer was so unreasonable that she would have been justified in ignoring it. So far as the hearing here, she is entitled to damages for delay in payment, and on that basis I will instruct that she may answer the question."

We have the recent case of Lakewood Memorial Gardens, Inc., Appeal, supra. This case involved the question as to when the taking actually occurred. It was determined that the taking occurred as of the date of the adoption of the resolution of condemnation. The date in that particular case was important because the land was, on the date of taking established by the resolution, of substantially less value than on a subsequent date for which the owner contended. The court said, at page 57:

"Justice therefore dictates that the taking by a public body relate back to the date of the ordinance or resolution of condemnation once physical entry is made. On that basis, the owner is entitled to damages from the date of the condemnation for detention of

payment which is the equivalent of the use of the appropriated property for which he is also indemnified at its market value as of the date of the condemnation."

In the instant case, damages were determined as of the date of the taking, to wit, April 12, 1948, and the owner is entitled to compensation as of that date, and since no compensation has been made to the owner, she is entitled to some compensation not exceeding the legal rate of interest on the amount of the damages to her property.

There can be no doubt on the question of damages for delay in view of what is said in Fidelity-Philadelphia Trust Company v. Commonwealth, 352 Pa. 143 (1945). This case reports the opinion of Mr. Justice Jones, to which the court on oral argument of the instant case made reference.

The principal question raised on this appeal is whether an owner of property appropriated by or in behalf of the Commonwealth through condemnation is entitled to damages for delay in payment of the sum ascertained to be reasonable compensation for the property so taken. Mr. Justice Jones, after reciting the law that "Prima facie, an owner of private property which is condemned and appropriated for public use is entitled to damages for delay in payment of the sum due as reasonable compensation for the property taken", specifically found that it applies to the Commonwealth. He says, at page 145:

"Such being the law in general, is damage for delay in payment compensable when the Commonwealth is the condemnor? We think it is. Loss of use of the property or its proceeds because of delay in payment is an element of damage the same as is the value of the appropriated property. The law so recognizes: see cases cited supra. The Constitution of the State requires that just compensation be first made or secured for the taking of private property for public use.

Where that is not first done, i. e., at the time of the taking, the integrity of the constitutional requirement can be respected only by including in the award for the value of the property taken such damage as there may have been (within legally prescribed limits) due to the delay in payment for the property. . . .

"But, until the damages for the Commonwealth's taking of private property for public use are ascertained, there is no debt. In determining by legal proceedings the quantum of the debt due for the taking, damages for delay in payment is a proper element. It is not interest. While 'measured by an interest rate (it is) recoverable as damages': See *Whitcomb v. Philadelphia*, 264 Pa. 277, 284, 107 A. 765, which also specifies how the measuring rate may be arrived at. It is after the damages, compensatory for the taking and the delay in payment, have become fixed as a debt of the Commonwealth that the pertinency of the rule in the *Culver* case, supra, arises. In ascertaining the debt, the plaintiff had a right to have the jury determine the damages, if any, due to the delay in payment from the time of the taking."

See also Gravity Fill Service Station, Inc., v. Turnpike Commission, 85 D. & C. 190 (1953). There the turnpike commission, after a jury in eminent domain proceedings found for plaintiff a certain sum "and in addition a detention fee", filed motions for new trials, giving as its reason that the court erred in instructing the jury that it could add to the amount of the verdict for plaintiffs compensation for delay. The commission relied on the same case of Pennsylvania Turnpike Commission v. Smith, 350 Pa. 355, as it does in the instant case. The court ruled that the Smith case and other cases like it dealt with interest and not with damages for delay in payment, and on page 193, quoting Mr. Justice Jones in Fidelity-Philadelphia Trust Company v. Commonwealth, supra, said:

". . . His measure of damages in substituting specie for a realty asset is the difference between the before and the after value of the property taken and as affected by the taking. Why should the condemnor have the use and become the owner of the realty asset on the date of the taking and the condemnee receive nothing while he is deprived of the use of the money. The fact that the condemnee has a bond as security is of no importance in connection with his right for damages in delay in payment because there is a presumption in law that the owner is entitled to such damages and it is the burden of the condemnor to overcome that presumption. . . .

"Cases ruling on the right to damages for delay in payment of compensation in an eminent domain proceeding may be found in the footnotes to section 227, 14 Standard Pa. Practice. If condemnors wish to avoid the payment of detention money as occurred in each of the verdicts rendered by the juries in these current proceedings, they should follow the procedure outlined in The Philadelphia Ball Club, Limited, v. The City of Philadelphia, 192 Pa. 632, and submit it to the jury affirmatively that the demands of the property owner were so grossly excessive and unreasonable that no settlement based on just compensation could be amicably effected.

"In one of these cases now before us the highest estimate of damages by plaintiff's expert was $187,145. The lowest estimate of damages given by defendant's expert was $26,920—an almost irreconcilable spread.

"It is our conclusion that the motions of defendants to strike from the verdicts the detention damages awarded by the juries should be denied."

Still further convincing is the latest case on the subject of damages for delay, Gitlin v. Pennsylvania Turnpike Commission, 384 Pa. 326. This case cites the Fidelity-Philadelphia Trust Company case, supra,

with approval, and only because of the turnpike's persistence in claiming it is not liable for damages for delay in payment, devotes three pages (pages 330, 331 and 332) to demonstrate unequivocally that the commission *is* liable for damages for delay in payment.

The Constitution of Pennsylvania in article I, sec. 1, guarantees to all men certain inherent and indefeasible rights, including the right of acquiring, possessing and protecting property, and in section 11 it is guaranteed that for an injury done him in his lands, one shall have remedy by due course of law. The Pennsylvania Turnpike Philadelphia Extension Act, by its title and its various provisions, imposes a clear duty upon the turnpike commission to pay adequate compensation for any private property damaged or destroyed in carrying out the powers granted by the act. This act clearly gives the owner the right to receive adequate compensation for the lands taken and those severed, as well as damages for delay in payment. The turnpike commission admits its liability for the 8¼ acres actually occupied by the turnpike. It is clearly liable for the damages to the land severed. Twenty-two acres of claimant's property have been damaged or destroyed in the carrying out of the powers granted the turnpike commission. They have not been restored or repaired and placed as nearly as practicable in their original condition. Therefore, adequate compensation should be paid the owner therefor. In 18 Am. Jur. 814, under the heading of "Eminent Domain", section 183, we find:

". . . Total deprivation of access is equivalent to a taking, . . ."

Clearly, an owner of land cannot constitutionally be deprived of all access to his premises without compensation. Nor can we agree with the turnpike commission's third exception that the viewers' award is excessive. In the concluding paragraph of their report,

the viewers say that they have determined the damages due claimant for appropriation, severance, consequence and delay, in order to demonstrate to the court and to the parties that all possible compensable matters have been considered and in order to preclude claimant from asserting that the report omitted any elements of compensable damage. In view of this comprehensive finding, and after a consideration of the various testimony submitted as to value, we feel that the award is not excessive.

It is our considered opinion, after reviewing the law and all of the testimony, that all three of the turnpike commission's exceptions must be dismissed, and we, therefore, make the following

### *Order*

And now, May 7, 1956, all of the exceptions filed by the Pennsylvania Turnpike Commission to the award of the viewers in this case are dismissed and the award is confirmed.