## Bear Creek Realty Co. Petition

*H. T. Rowlands* and *Allan M. Kluger*, for turnpike commission.

*John L. McDonald*, for plaintiff.

PINOLA, J., November 20, 1956.—The Pennsylvania Turnpike Commission asks that we set aside the appointment of a board of viewers made July 27, 1956, to consider damage to property at Bear Creek because there was no taking.

The commission insists that the damages are consequential and, therefore, plaintiffs' sole remedy is an action in trespass to be brought in Dauphin County.

The petition for the appointment of viewers was presented by the Bear Creek Realty Company, Inc., owner of one half of the land under Bear Creek Lake and approximately 2,500 acres of land in the vicinity of the lake, the Bear Creek Association, which owns 10 acres of land on the lake with riparian rights, numerous owners of properties having privileges in connection with the lake and owners of property along Ten Mile Run, a stream which leads into the lake.

They allege that on or about May 17, 1956, the commission, acting through the Badgett Mine Stripping Corporation, "appropriated for its own use the streams, lake and land of . . . petitioners and have intentionally and deliberately, without authority or right, caused water to be diverted from its natural flow" and pumped it by artificial means over Wyoming Mountain into Ten-Mile Run and thence into Bear Creek and Bear Creek Lake. The water contains earth, silt, mud, dirt and debris, which, in effect, has caused

Ten-Mile Run, Bear Creek and Bear Creek Lake to be discolored, contaminated and polluted.

They further aver that the silt in the water is deposited in the streams and in the lake creating a sand bar and a general deposit in the basin of the lake changing the depth of the lake and the contour of the shore line and killing fish and aquatic life.

Counsel for the commission insists that the sole statutory authority for the appointment of viewers is to be found in section 9 of the Pennsylvania Turnpike Northeastern Extension Act of September 27, 1951, P. L. 1430, 36 PS §660.9(a), which provides, inter alia:

"Whenever a reasonable sum representing the damages cannot be agreed upon, . . . either the Commission . . . or any owner or owners, shall apply to the court of common pleas of the county in which the property is located . . . for the appointment of viewers to determine, as hereinafter provided, the amount of damages resulting from the taking."

With this we cannot agree because section 6(k) of the same act declares that:

". . . Adequate compensation shall be made by the Commission out of funds provided under the authority of this act for damages to all public or private property *taken, injured or destroyed* in carrying out the powers granted by this act, or such property may be restored or repaired and placed in its original condition as nearly as practicable, as the commission may deem it expedient in any particular case." (Italics supplied.)

The commission, in support of its contention, cites Ewalt v. Pennsylvania Turnpike Commission, 382 Pa. 529, which in many respects is similar to the case before us. We believe, however, that it supports our conclusion. There the court held that a bill in equity might be brought to compel the turnpike commission

to restore property of plaintiffs which was damaged in the same manner as here. The court did say, page 533:

"That the damages whereof the plaintiffs complain are consequential and not direct is clear. Contrary to the plaintiffs' contention, there was no *taking* their property. Nor did the defendant make entry thereon within the legal significance of that term. And, when property is not actually taken or entered but an injury to it occurs as the natural result of an act lawfully done by another, the damages are consequential."

But section 6(*k*) of the act involved in that case, the Act of May 16, 1941, P. L. 949, 36 PS §653e(*k*), is worded somewhat differently. It reads:

"All public or private property damaged or destroyed in carrying out the powers granted by this act shall be restored or repaired or placed in their original condition as nearly as practicable, or adequate compensation made therefor out of funds provided under the authority of this act."

Section 8 of that act, 36 PS §653(*g*), authorizes the commission to purchase such property as it may deem necessary or convenient for the construction of the turnpike.

And section 9, 36 PS §653(*h*), declares that:

"Whenever a reasonable price cannot be agreed upon . . . the commission is hereby authorized and empowered to acquire by condemnation, in the manner herinafter provided, any lands . . . and other property deemed necessary or convenient for the construction or the efficient operation of the turnpike or necessary in the restoration of public or private property damage or destroyed. In such event application shall be made . . . for the appointment of viewers."

It is to be noted that the viewers are to be appointed when a price cannot be agreed upon and the commission acquired property by condemnation.

Section 6(*h*) in our case deals with compensation to be made for property "taken, injured or destroyed", and section 9, 36 PS §660.9(*a*), declares, not *whenever a price cannot be agreed upon*, but:

"*Whenever a reasonable sum representing the damages cannot be agreed upon* . . . either the Commission or any owner or owners, shall apply to the court of common pleas of the county in which the property is located . . . for the appointment of viewers to determine, as hereinafter provided, the amount of damages resulting from the taking." (Italics supplied.)

We appreciate that the final sentence provides that the viewers determine "the amount of damages resulting from the taking." But we do not believe that this ambiguity should result in a different treatment between persons whose property is taken and persons whose property is damaged or destroyed.

It is unreasonable to say that for property taken viewers may be appointed, but for property injured or destroyed, the owners are required to sue in Dauphin County in an action in trespass.

We cannot believe that the legislature intended that these residents should be required to bring an action in that county and that a jury empaneled there should then be brought back to Luzerne County to view the premises and the alleged damages. Such is an unreasonable construction.

Section 19 of the act, 36 PS §660.19, declares that the act "being necessary for the welfare of the Commonwealth and its inhabitants, shall be liberally construed to effect the purposes thereof".

Article IV, sec. 51, 46 PS §551 of the Statutory Construction Act of May 28, 1937, P. L. 1019, declares:

". . . Every law shall be construed, if possible, to give effect to all its provisions".

And in article IV, sec. 58 of the Act of 1937, P. L. 1019, 46 PS §558, excepting certain classes of provi-

sions which shall be strictly construed, the legislature declared:

". . . All other provisions of a law shall be liberally construed to effect their objects and to promote justice".

Reading section 6 and section 9 together affords a complete system for ascertaining damages in case of property *taken, injured or destroyed.*

Judge Sohn very recently construed a similar act liberally in Espenshade Condemnation, 8 D. & C. 2d 345, where he affirmed an award of viewers granting compensation for 22 acres of land which were severed and rendered inaccesible by the turnpike construction even though such land was not actually taken. The language of section 6(k) of the applicable turnpike act was exactly like that in the Ewalt case. Judge Sohn declared:

"This section clearly indicates also that the turnpike commission not only need pay for the land condemned, taken and occupied by it, but for all damages which are suffered as a consequence of the taking and which cannot be compensated except through a money payment."

Furthermore, it occurs to us that unless plaintiffs have a right to be heard before the viewers, the statute would be unconstitutional.

To the extent that the act takes from plaintiffs the right, enjoyed by others, to bring their action in the courts of Luzerne County, the act would amount to a denial to plaintiffs of the protection of the laws within the Fourteenth Amendment to the Constitution of the United States and similar provisions of our own Constitution: 16A C. J. S. 504, §558; Hendrix v. High Point, T. & D. Ry. Co., 202 N. C. 579, 163 S. E. 752.

In Bogni v. Perotti, 224 Mass. 152, 112 N. E. 853, the court declared, page 156:

"It is an essential element of equal protection of the laws that each person shall possess the unhampered right to assert in the courts his rights, without discrimination, by the same processes against those who wrong him as are open to every other person. The courts must be open to all upon the same terms. . . . Recourse to the law by all alike without partiality or favor, for the vindication of rights and the redress of wrongs, is essential to equality before the law".

Since no intention to violate the Constitution of the United States or of this Commonwealth is to be imputed to the legislature (Statutory Construction Act, supra, article IV, sec. 52(3), 46 PS §552(3)), our courts have required in many cases that construction must be given to a statute which will save the constitutionality, and this without reference to conflictting or irreconcilable provisions: Commonwealth v. Chester County Light & Power Co., 48 Dauph. 1, affirmed, 339 Pa. 97. See also numerous cases in note 6, 46 PS §552.

It is the duty of the courts to give the statute, if possible, an interpretation which will prevent any conflict with the Constitution: Hotel Casey Co. v. Ross, 343 Pa. 573; Homestead Borough v. Defense Plant Plant Corporation, 456 Pa. 500.

The construction which we have placed on the two sections, 6 and 9, does just that.

In passing, we wish to point out that the damages in this case are not consequential damages. In several cases the Supreme Court has pointed out that: "Consequential damages arise when property is not actually taken or entered but an injury to it occurs as the natural result of an act lawfully done by another": Soldiers and Sailors Memorial Bridge, 308 Pa. 487, 490; Puloka v. Commonwealth, 323 Pa. 36, 41; Harvey v. Ridley Twp., 350 Pa. 210, 213.

The damages here are not consequential because they are not the result of an act *lawfully* done by another. They are the direct result of an act *unlawfully* done by an agent of the turnpike commission, in the execution of its plan of construction of the turnpike. The damages here might better be termed "resultant damages". They are the direct result of a willful and deliberate illegal act done at the direction of the turnpike commission.

It is our considered opinion that the viewers were properly appointed and we, therefore, make the following

### Order

The rule to show cause why the appointment of the board of viewers should not be set aside, is discharged.