# Bloom *v.* Brotherhood Accident Company, Appellant.

*Insurance—Accident insurance — Terms of policy — Death by poisoning.*

An insured who met his death by mistakenly taking soluble salts of barium, a poison, instead of barium sulphate, an insoluble powder, used in x-ray examinations, will be considered to have met his death as the result of "external, violent and accidental means."

Where the decedent was insured against personal bodily injuries received "through external, violent and accidental means, leaving upon the body external marks of contusions or wounds visible to the eye," recovery will be allowed where the insured died from mistakenly taking the poison, which caused violent vomiting and a large bluish lump on insured's throat.

Argued March 11, 1925. Appeal, No. 6, March T., 1925, by defendant, from judgment of C. P. Dauphin Co., Sept. T., 1921, No. 162, in the case of Morris Bloom and Ethel Bloom by their next friend and mother, Sarah Bloom, v. Brotherhood Accident Company. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAW-THROP, JJ. Affirmed.

Assumpsit on a policy of insurance. Before WICKER-SHAM, J.

The facts are stated in the opinion of the Superior Court.

Verdict for the plaintiff in the sum of $2,335.66, and judgment thereon. Defendant appealed.

*Errors assigned* were, among others, refusal of defendant's motion for judgment non obstante veredicto.

*Daniel H. Kunkel,* for appellant.—The death of the insured was not due to external, violent and accidental

means within the meaning of the policy of insurance: Pledger v. Businessmen's Accident Association, 288 S. W. 110; Stone v. Fidelity & Cas. Co. of N. Y., 133 Tenn. 672, 182 S. W. 152, L. R. A. 1916 D. 536; Shanberg v. Fidelity & Cas. Co. of N. Y., 158 Fed. 1, 19 L. R. A. (N. S.) 1206; Standard Life & Acc. Co. v. Schmaltz, 66 Ark. 588, 53 S. W. 49; Horsfall v. Pacific Mut. Life Ins. Co., 32 Wash. 132, 72 Pac. 1028; Ætna Life Insurance Company v. Robinson, 262 S. W. 118; Byrant v. Continental Casualty Co., 182 S. W. 673, L. R. A. 1916; E. 945, Ann. Cas. 1918 A. 517; McGlother v. Provident Mut. Acc. Co., 89 Fed. 685; Riley v. Interstate Businessmen's Acc. Assn., 152 N. W. 617; Smith v. Travelers Ins. Co., 219 Mass. 147, 106 N. E. 607, L. R. A. 1915 B. 872; Stacey's Executor v. Fidelity & Casualty Co., 143 Fed. 271, 5 L. R. A. (N. S.) 657; Pollock v. United States Mutual Acc. Assn., 102 Pa. 230; Carnes v. Iowa State Travelingmen's Assn., 106 Ia. 281, 76 N. W. 683.

*John R. Geyer,* and with him *Samuel Levin* and *Paul G. Smith,* for appellee.

The insured met his death through accidental means, and his beneficiaries were entitled to recover: 1 Corpus Juris, Accident Insurance, page 427, section 73; Pickett v. Pacific Mutual Life Insurance Co., 144 Pa. 79; North American Life and Acc. Insurance Co. v. Burroughs, 69 Pa. 43; Farner v. Massachusetts Mutual Acc. Assn., 219 Pa. 71; Lane v. Horn & Hardart Baking Co. Appeal, 261 Pa. 329; 7 A. L. R. 1131 annotation; Healey v. Mutual Acc. Assn., 25 N. E. 52; Mutual Acci. Assn. v. Tuggle, 28 N. E. 1066; Travelers Ins. Co. v. Dunlap, 43 N. E. 765; Metropolitan Acci. Assn. v. Froiland, 43 N. E. 766; Riley v. Interstate Businessmen's Assn., 76 N. W. 683; Dezell v. Fidelity & C. Co., 75 S. W. 1102; U. S. Mutual Accident Assn. v. Newman, 3 S. E. 805; Fehrer v. Midland Casualty Co., 190 N. W. 910; Jones v. Hawkeye Com. Men's Assn., 168 N. W. 305.

400 BLOOM v. BROTHERHOOD ACCIDENT CO., Appel.

OPINION BY LINN, J., April 28, 1925:

The plaintiffs, children of Barnett Bloom, deceased, have judgment on a verdict in their suit on an accident and health insurance policy issued by defendant, who complains that judgment n. o. v. was refused. While that is the single error assigned, defendant asserts that the court below misconstrued the policy in three respects, and that a correct interpretation of any one of them will require a reversal.

Decedent was insured "against personal bodily injuries received through external, violent and accidental means, leaving upon the body external marks of contusions or wounds visible to the eye (accidental drowning excepted) which alone, independent of all other causes, shall within ninety (90) days from the date of the accident cause loss of life......." Then follow provisions specifying indemnity for certain disabilities, and for weekly payment for other bodily injury. There is also a clause entitled "Sickness Indemnity," providing for weekly payment on specific conditions, one of which is that there must be incapacity "for a period of not less than one day by sickness alone with a pronounced disease......" Other paragraphs follow under the title "General Provisions," one, providing "It is agreed that sunstroke, freezing, carbuncles, boils, felons, lockjaw, abscesses, ulcers, orchitis, strains, blood poison, in any form (septic or otherwise), contact with gas or poisonous or infectious substances, hydrophobia, shall be classified as sickness......"

As appellant's contentions are based on its construction of the quoted passages applied to the evidence, we observe the rule in passing on the motion for judgment n. o. v. requiring us to make the inferences from the oral evidence most strongly supporting the verdict and to discard what would be inconsistent with it.

Decedent's physician, desiring to subject him to an x-ray examination, gave him a written prescription calling for two ounces of barium sulphate—an insoluble

powder used in x-ray examinations—directing him to take it in two glasses of milk in the morning and report for examination in the afternoon. He took the prescription to a pharmacist, who, as the verdict establishes, erroneously supplied a soluble salt of barium,—a poison—though labeled barium sulphate. Decedent took it as advised and shortly afterward became violently ill and died of the effects of it within 24 hours. Soon after taking the drug, he begun vomiting violently and continued to do so for a long time at frequent intervals—one witness said "about every 8 minutes"; his widow testified that on his throat he developed "a big lump"; his son testified, "I saw on his throat [before death] there was a big projection here (?) and it was of a bluish color"; his lips also then were blue and his body pale. No complaint is made of the charge to the jury so that we may assume—and our reading of the charge seems to confirm it—that the various theories of appellant as applied to the evidence was adequately put to the jury.

1. Was his death the result of "external, violent and accidental means"? The verdict establishes that fact, and the precedents are so numerous sustaining the conclusion that reference to some of them without discussion, is sufficient: Pickett v. Ins. Co., 144 Pa. 79, 91, (decedent asphyxiated in a well by gas not suspected there); Paul v. Ins. Co., 112 N. Y. 472 (asphyxiation); Eby v. Ins. Co., 258 Pa. 525 (death due to tooth brush bristles coming out during tooth brushing and causing choking and hemorrhage); Ins. Co. v. Burroughs, 69 Pa. 43 (strain caused by harvesting hay); McGlinshy v. Casualty Co. (Maine), 14 Atl. Rep. 13, (strain or fright incident to restraining a runaway horse); Riley v. Accident Assn. (Iowa), 152 N. W. 617, (poison given by mistake of physician, although recovery was refused under an exception against "disability or death resulting from the voluntary or involuntary taking of poison"); Christ v. Ins. Co. (Ill.), 144 N. E. 161, (drinking water polluted through defective valve designed to ex-

clude it from the main) ; Casualty Co. v. Griffis, (Ind.), 114 N. E. 83, 84, (ptomaine poison from eating mushrooms supposed to be edible) ; Sutter v. Ins. Co., 215 Ill. App. 341 (eating tainted food supposed pure) ; Association v. Lewis, 257 Fed. 552, C. C. A. 8th Cir. (infection resulting from use of scarf pin in puncturing abscess) ; death from frost, quoted at p. 334 of Lane v. Horn et al., 261 Pa. 329; see also 1 C. J. 427, 431-2; 14 R. C. L. 1249. All but one of those cases were decided before the policy in suit was issued and show a widespread understanding that the words in question were susceptible of the interpretation put upon them by the plaintiffs and by the court below; if they could be deemed ambiguous, familiar principles prevent defendant from having the ambiguity determined in its favor.

2. Were there "upon the body external marks of contusions or wounds visible to the eye"? We need not consider plaintiffs' contention that the provision applies only if the accident cause injury not resulting in death (McGlinshy v. Casualty Co., supra; Paul v. Ins. Co., supra), for the court instructed the jury in response to defendant's request, that if the alleged "cause of death did not leave upon his body external marks of contusions or wounds visible to the eye, the verdict must be for defendant." The evidence on that subject has been referred to, and as a wound, in a popular sense, is any lesion of the body (1 C. J. 434, 14 R. C. L. 1250, Thompson v. Association (Mich.) 132 N. W. 554, 557; Robinson v. Association (Vt.), 88 Atl. Rep. 531; Accident Co. v. Campbell, (Ark.) 245 S. W. 307), the verdict removes the point from further controversy.

3. Appellant also contends that the provisions concerning and defining sickness apply, and as decedent was not sick for one day, and as his death was caused by contact with a poisonous substance, plaintiffs should not recover. There is an obvious difference between taking poison and coming in contact with it, as is illustrated by Dent v. Association, C. C. A. 8th Cir. 213 Fed. 981;

but if by coming in contact with a poisonous substance, the insurer meant to include taking poison, that understanding should have been specifically expressed; and the omission so to express it, is sufficient reason (if more were needed than the obvious difference in the meaning of the phrases) for holding that contact with a poisonous substance was not intended to cover the taking of poison in circumstances whereby it accidentally caused death: Farner v. Assn., 219 Pa. 71, 73; Dent v. Assn. (supra); Simpkins v. Assn., 126 N. W. 192.

The judgment is affirmed.

PORTER and KELLER, JJ., are of opinion that the external effects of poison taken internally are not wounds or contusions within the meaning of the policy.