Beckham *v.* Travelers Insurance Company, Appellant.

Argued September 16, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Richard J. Van Roden,* with him *Pepper, Hamilton & Scheetz,* for appellant.

*Charles Polis,* with him *Polis and Polis,* for appellee.

OPINION BY ERVIN, P. J., November 10, 1965:

This is an action in assumpsit brought by the mother of Andrew Beckham, who was the named beneficiary under a group policy of insurance covering the employes of the Humble Oil & Refining Company. This suit was brought to recover the sum of $4,000.00 under the policy, which provided: "If bodily injury not hereinafter excepted effected directly and independently of all other causes through accidental means shall be sus-

tained by a Participant while insured under this Part. . . ."[1]

The plaintiff's complaint alleged that Andrew Beckham died as a result of accidental means caused by an overdose of narcotics. The defendant filed an answer and new matter, admitting the overdose of narcotics, but denying that the death was effected directly and independently of all causes through accidental means within the meaning of the terms of the policy. The case was tried before Hon. FELIX PIEKARSKI and a jury. The only evidence introduced was the testimony of Dr. James T. Weston, medical examiner for the City of Philadelphia, a copy of the death certificate, which showed that the insured "injected self with narcotic overdose", and a copy of the certificate of insurance. The defendant did not introduce any evidence and specifically admitted that the death was accidental, that it was not homicide and that it was not suicide. The jury returned a verdict in favor of the plaintiff in the sum of $4,410.00. Defendant's motions for judgment n.o.v. or for a new trial were dismissed and judgment was entered on the verdict.

The contention of the defendant is the same as that which was tersely stated by Judge, later President Judge, KELLER in the case of *Trau v. Preferred Accident Insurance Co. of N.Y.,* 98 Pa. Superior Ct. 89: "It may be admitted, for the purposes of this case, that the injury was an accidental one, that is, that it happened by chance or unexpectedly; but that is not the test. Was it caused by *means* which were external, not natural, and which happened by chance or unexpectedly?"

In 29A Am. Jur. 311, Insurance, §1166, it is pointed out that there is a conflict of authority in the United States based on a distinction in the cases involving ac-

---

[1] The sum of $4,000.00 life insurance, under another separate policy, has been paid.

cidental means and accidental results. The text lists cases from 23 jurisdictions,[2] including Pennsylvania, holding "that insurance against death or injury by 'accidental means' is not insurance against death or injury by accident or as an accidental result; and that hence death or injury is not incurred by 'accidental means' merely because the effect or result is accidental in the sense that it is unforeseen, undesigned, unusual, and unexpected." It also lists cases from 14 jurisdictions[3] which either did not recognize such distinction or which have repudiated their earlier holdings and have held the terms to be legally synonymous. The article states that many of these decisions have resulted from the reasoning of Mr. Justice CARDOZO in his dissenting opinion in *Landress v. Phoenix Mutual Life Insurance Co.,* 291 U.S. 491 (1934), wherein he said: "The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog" and states that it is not improbable that more courts may adopt the view of Mr. Justice CARDOZO as time goes on.

It will be noticed that Pennsylvania is included in the list of jurisdictions recognizing the distinction. This is true. It was stated in *Arnstein v. Metropolitan Life Insurance Co.,* 329 Pa. 158, 162, 196 A. 491: "It is true that in many jurisdictions, including our own State, a distinction is made between accidental injury and injury occasioned by accidental means: Hesse v. Travelers' Insurance Co., 299 Pa. 125, 129; Urian v.

---

[2] Alabama, California, Connecticut, Delaware, Georgia, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Michigan, Missouri, Montana, New Hampshire, New Jersey, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, Tennessee, Texas and West Virginia.

[3] Arkansas, Colorado, Idaho, Iowa, Kansas, Louisiana, Nebraska, New York, Oklahoma, Utah, Vermont, Virginia, Washington and Wisconsin.

Equitable Life Assurance Society, 310 Pa. 342, 346; Semancik v. Continental Casualty Co., 56 Pa. Superior Ct. 392, 399, 402; Trau v. Preferred Accident Ins. Co., 98 Pa. Superior Ct. 89, 94. See Landress v. Phoenix Mutual Life Ins. Co., 291 U.S. 491. A means is not accidental when employed intentionally, even though it produces an unintended result. But if, 'in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means': U. S. Mutual Accident Association v. Barry, 131 U.S. 100, 121."

The following section in 29A Am. Jur. (§1167) discusses the question, further refined by the fact that the death or injury resulted from a voluntary or intentional act of the insured. Here again the article calls attention to the split of authority and indicates that the states which recognize a distinction between "accident" and "accidental means" hold that where an unusual or unexpected result occurs by reason of the doing by the insured of an intentional act with no mischance, slip or mishap occurring *in doing the act itself*, the ensuing injury or death is not caused by accidental means—that it must appear that the *means* used was accidental and that it is not enough that the *result* may be unusual, unexpected or unforeseen. On the other hand, it is pointed out that in the states which do not recognize the distinction, it is enough that the death or injury is not the natural or probable result of the insured's voluntary act.

Finally, there is a section which specifically discusses "Voluntary Taking of Overdose" (§1224, 29A Am. Jur. 365). Here again is a reference to the split of authority and the statements "In those jurisdictions in which a distinction has been drawn between the term 'accidental means' and the terms 'accident' or 'accidental death', death from insured's voluntary act in taking an overdose of medicine or drugs does not consti-

tute a death from accidental means." and "In those jurisdictions where the distinction between the terms 'accidental death' or 'accident' and the term 'death by accidental means' has been repudiated, the insured's beneficiary is entitled to recover on the policy if death was not intended by the insured as a result of taking what proved to be an overdose of a drug or medicine."

Poison taken accidentally or by mistake is not included in the foregoing discussion but is covered in a separate paragraph (§1227). Cases in this category, however, turn, not on the split of jurisdictions, but on the wording of the policy.

One of the earliest cases in Pennsylvania involving this question was *Pollock v. United States Mutual Accident Association*, 102 Pa. 230. In that case the insured voluntarily drank "oil of birch", a deadly poison, mistaking it for "milk of birch", a harmless beverage which he had taken many times before. A judgment for the defendant was affirmed. In the particular policy involved, injury had to be caused by external, violent and accidental means. It expressly provided that it did not extend to death caused by "taking of poison." The Court said: "It is not necessary that the poison be taken with an intent to produce death, in order to defeat a claim flowing from the right of membership. If the poison be innocently taken, and without any knowledge of the injurious effect which it was likely to produce, and did produce, so far as the person taking it is concerned, the effect may be said to be accidental. If we go a step further and admit in such case, that the 'means' are accidental; yet it is one of the accidental means expressly excepted from the protective power of the certificate."

In *Pickett v. Pacific M. L. Ins. Co.*, 144 Pa. 79, 22 A. 871, the insured went down into a well to repair it and was asphyxiated by gas which "had unexpectedly accumulated in the dug-out portion of the shallow

well." There was no evidence that he had committed suicide or that he had voluntarily exposed himself to danger. The policy contained a clause: "This insurance shall not cover . . . death or injury resulting from . . . inhalation of gas. . . ." The Court held that the exception of "inhalation of gas" can be understood to mean a voluntary and intelligent act of insured and not an involuntary and unconscious act. Therefore, recovery was allowed on the ground that his actions were not voluntary. It distinguished *Pollock v. United States Mutual Accident Association,* supra, because in the former case the drug was voluntarily and intentionally taken by the deceased.

In *Urian v. Equitable Life Assurance Society,* 310 Pa. 342, 165 A. 388 (1933), it was stated: "The expression 'accidental means' has been in use in policies of insurance for more than fifty years [so that at the present time it would be more than 80 years]. It has been interpreted in nearly every state in the union. The case which is most often quoted is probably U. S. Mut. Acc. Assn. v. Barry, 131 U.S. 100, where the following instructions were approved by the Supreme Court of the United States: 'If a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means.' This is substantially the definition given in the textbooks: 6 Cooley, Briefs on Insurance (2d edition) 5234; Couch, Insurance, section 1137; Vance, Insurance, 871.

"Another frequently quoted definition is that given by SANBORN, J., in Western Comm. Travelers' Assn. v. Smith, 85 Fed. 401: 'An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental

means. It is either the result of actual design, or it falls under the maxim that [every man must be held to intend the natural and probable consequence of his deeds]. On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, . . . is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means."

The court analyzed the earlier Pennsylvania cases and said: "Our cases have uniformly held that where the cause of injury or death was an act of the insured, the means which caused the result, to be accidental, must be undesigned and unintentional, that accidental injury or death is an unintended and undesigned result arising from acts done, while injury or death by accidental means is a result arising from acts unintentionally done. Thus, recovery was allowed on these principles in Taylor v. Gen. Acc. Ass. Corp., 208 Pa. 439; Erb v. Comm. Mut. Acc. Co., 232 Pa. 215; Kelley v. Pittsburgh Cas. Co., 256 Pa. 1; Eby v. Travelers Ins. Co., 258 Pa. 525; Bloom v. Brotherhood Acc. Co., 85 Pa. Superior Ct. 398; Horan v. Prudential Ins. Co., 104 Pa. Superior Ct. 474; see Pickett v. Pac. Mut. Life Ins. Co., 144 Pa. 79; and denied in Hesse v. Traveler's Ins. Co., supra; Semancik v. Continental Cas. Co., 56 Pa. Superior Ct. 392; Trau v. Preferred Acc. Ins. Co., supra; Camp v. Prudential Ins. Co., 107 Pa. Superior Ct. 342."

In that case the insured, while repairing an automobile in his private garage, died from the unconscious inhalation of carbon monoxide gas. It was held that the breathing of the gas was not intentional and therefore the means or cause of death was accidental.

A very good illustration of the circumstances which can be considered "accidental means" is *Arnstein v. Metropolitan Life Insurance Co.*, supra. Insured had an ingrown toenail. It was partly removed by a chiropodist. In order to heal it, insured exposed his foot to the rays of a heat lamp, which he had been in the habit of using for therapeutic purposes, usually for five or six minutes at a time. On this occasion, however, he fell asleep, so that the exposure continued for a much longer time than intended and caused a severe burn on the instep. A blister developed, which subsequently broke, resulting in an open and visible wound, and septic infection set in. The leg was amputated, but insured died of streptococcic septicema. The Supreme Court held that the means were employed intentionally only up to the time the insured fell asleep and that thereafter the exposure of his foot to the heat was unintentional and involuntary and therefore the means which produced the injury became "accidental."

In addition to the Supreme Court cases, there have been many cases in our Court. All of them recognize the distinction between accident and accidental means and the cases have turned upon whether or not the facts have brought them within the definition. See *Bloom v. Brotherhood Accident Co.*, 85 Pa. Superior Ct. 398; *Trau v. Preferred Accident Insurance Co. of N. Y.*, supra; *Kinavey v. Prudential Insurance Co.*, 149 Pa. Superior Ct. 568, 27 A. 2d 286; *McCarron v. John Hancock Mutual Life Insurance Co.*, 156 Pa. Superior Ct. 287, 40 A. 2d 118; *Zuliskey v. Prudential Insurance Co.*, 159 Pa. Superior Ct. 363, 48 A. 2d 141. In the latter case the insured either fell from, or jumped from,

a moving car. It was held that the burden was on the plaintiff to show that the car door opened by chance or fortuitously and that the plaintiff did not meet that burden. The Court said: "That she did not intend to die may be true, but that the injuries were greater than she had anticipated would not constitute an accident. 'If, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means': Urian v. Equitable Life Assurance Society, 310 Pa. 342, 165 A. 388, citing U. S. Mut. Acc. Assn. v. Barry, 131 U.S. 100. The only unexpected thing was the severity of her injuries."

We feel that such is the situation of the plaintiff in the present case. The plaintiff had the burden of proving that there was some mischance, slip or mishap occurring in the act of injecting the narcotics. Plaintiff was unable to produce such evidence and the result was that she did not meet her burden.

In *Brenneman v. St. Paul Fire and Marine Insurance Co.*, 411 Pa. 409, 192 A. 2d 745, cited by the plaintiff, the language of the policy provided for the payment of the indicated sum on proof of loss of life "resulting directly and independently of all other causes from accidental bodily injury . . . and (excluding such loss) resulting from . . . bodily or mental infirmity or any kind of disease. . . ." That policy did not base liability on "accidental means."

Were this a case of first impression in Pennsylvania, we might be inclined to follow the apparent trend of the recent decisions in other jurisdictions but we are bound by the decisions of our Supreme Court. If there is to be any change in the policy of the Commonwealth on this subject, such change will have to come from the Supreme Court or from the legislature. It is our duty to reverse the court below.

The judgment of the court below is reversed and judgment is here entered for the defendant.

WRIGHT, J., would affirm on the opinion of the court below.