## Thomas, Appellant, v. Baird.

Argued March 17, 1969. Before BELL, C. J., JONES, COHEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Joseph N. Cascio*, with him *Fike, Cascio & Boose*, for appellant.

*Robert G. Rose*, with him *Spence, Custer, Saylor, Wolfe & Rose*, for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, April 23, 1969:

This is an appeal from an Order of the Court of Common Pleas sustaining defendant's preliminary objections in the nature of a demurrer.

The plaintiff alleged that at about 9:30 A.M. on July 26, 1966, the defendant Ronald G. Baird was operating a maintenance truck along the Pennsylvania Turnpike. The truck was owned by Baird's employer, the Pennsylvania Turnpike Commission, and, at the time the accident occurred, Baird was acting within the scope of his employment.

The plaintiff further alleged that Baird brought his truck to a stop in the right, or slow, lane of westbound traffic, disembarked from the truck and was standing on the running board. No precautions were taken to warn traffic coming from the truck's rear.

Plaintiff's decedent was operating a tractor-trailer in a westerly direction on the turnpike and, rounding a curve in the highway to his right, suddenly came upon defendant's truck. The decedent had no opportunity to stop his vehicle, and was killed in the ensuing collision.

The plaintiff, as administratrix of decedent's estate, brought this action in trespass to recover for decedent's death under the Pennsylvania statutes. The defendant Turnpike Commission then filed preliminary objections alleging that the Commission is an instrumentality of the Commonwealth engaged in a governmental function and, as such is immune from liability in trespass for injuries and damages resulting from the torts or negligence of its officers or employees. The lower Court sustained the preliminary objections.

Plaintiff acknowledges that our decision in *Rader v. Pennsylvania Turnpike Commission*, 407 Pa. 609, 182 A. 2d 199, controls the present case and supports the Order of the lower Court, but asks us to reconsider and overrule that decision. The plaintiff in *Rader* was injured when his automobile skidded and collided with a guard rail; in his complaint he alleged that the defendant Turnpike Commission allowed ice to accumulate on the turnpike and negligently failed to spread ashes or other abrasive materials thereon or to post a warning of the icy condition. In *Rader* we held that the Pennsylvania Turnpike Commission was an instrumentality of the Commonwealth engaged in a governmental function and hence immune from liability for the negligence of its employees.

The plaintiff in the instant case does not raise any arguments or contentions which were not adequately and fully considered and rejected in *Rader*. Moreover, *Rader* has been cited with approval by our Court several times, and its rationale applied to other factual situations.

For example, we granted sovereign immunity to the General State Authority (*Roney v. General State Authority*, 413 Pa. 218, 219, 196 A. 2d 349) ; to the Delaware River Port Authority (*Anderson Appeal*, 408 Pa. 179, 187, 182 A. 2d 514) ; and to the State Highway and Bridge Authority (*Eidemiller, Inc. v. State Highway and Bridge Authority*, 408 Pa. 195, 182 A. 2d 911).

*Rader* is firmly established as the law of Pennsylvania and no convincing reasons have been advanced for overruling it or changing the law.

Order affirmed.

Mr. Justice EAGEN took no part in the consideration or decision of this case.

_____

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

It is both necessary and unfortunate that I must once again vigorously dissent from this Court's continuing blind adherence to the doctrine of sovereign immunity. See *Harker v. D. & H. Building Wreckers, Inc.*, 429 Pa. 655, 241 A. 2d 73 (1968) (dissenting opinion) ; *Dillon v. York City School District*, 422 Pa. 103, 109, 220 A. 2d 896, 899 (1966) (dissenting opinion). The time is long past for this Court to join those twelve other jurisdictions which have recently abrogated the doctrine. See *Stone v. Arizona Highway Commission*, 93 Ariz. 384, 381 P. 2d 107 (1963) ; *Muskopf v. California Hospital District*, 55 Cal. 2d 211, 359 P. 2d 457, 11 Cal. Rptr. 89 (1961) ; *Hargrove v. Town of Cocoa Beach*, 96 So. 2d 130 (Fla. 1957) ; *Molitor v. Kaneland Community Unit Dist. No. 302*, 18 Ill. 2d 11, 163 N.E. 2d 89 (1959), cert. denied, 362 U.S. 968, 80 S. Ct. 955 (1960) ; *Brinkman v. City of Indianapolis*, 231 N.E. 2d 169 (Ind. App. Ct. 1967) ; *Haney v. Lexington*, 386 S.W. 2d 738 (Ky. 1964) ; *Williams v. City of Detroit*, 364 Mich. 231, 111 N.W. 2d 1 (1961) ; *Spanel v. Mounds View School Dist.*, 264 Minn. 279,

118 N.W. 2d 795 (1962); *Brown v. City of Omaha*, 183 Neb. 430, 160 N.W. 2d 805 (1968); *McAndrew v. Mularchuk*, 33 N.J. 172, 162 A. 2d 820 (1960); *Holytz v. City of Milwaukee*, 17 Wis. 2d 26, 115 N.W. 2d 618 (1962); *Parish v. Pitts*, 244 Ark. 1239, 429 S.W. 2d 45 (1968). It can be said with all due respect to those who originally promulgated the rule years ago that the doctrine is "no longer just, reasonable nor defensible" and that the "reasons underlying the traditional wide-sweeping rule of sovereign immunity have virtually disappeared in modern society." *Brown v. City of Omaha*, supra at 485, 160 N.W. 2d at 806.

Further, to those who would argue that this judicially promulgated doctrine should be rescinded by the Legislature if by anyone, I once again turn to the most recent opinion striking down this rule. "Both the Legislature and this court have power to act to change the doctrine and it may well be that the Legislature will have the ultimate word. This would seem to be a poor reason to avoid the court's obligation to modify the common law to serve the requirements of justice in a modern society. We ought not to thrust upon the Legislature the sole responsibility for injustice on the ground that, 'Thus it was said in the reign of Henry IV,' nor even on the ground that any change would constitute the traditionally condemned heresy of judicial legislation." Id. at 485, 160 N.W. 2d at 808; Keeton, Creative Continuity in the Law of Torts, 75 Harv. L. Rev. 463 (Jan. 1962); Keeton, Judicial Law Reform: A Perspective on the Performance of Appellate Courts, 44 Texas L. Rev. 1254 (July 1966); Peck, The Role of the Courts and Legislatures in the Reform of Tort Law, 48 Minn. L. Rev. 265 (Dec. 1963).

Finally, I believe the instant fact situation presents uniquely compelling reasons for abrogating the sovereign immunity doctrine. Here we have a turnpike authority which operates almost five hundred

miles of super highway over which some forty-eight million vehicles travel each year. In its most recently completed fiscal year, the Pennsylvania Turnpike Commission took in almost $56,000,000 in operating revenues. Existing as it does like any other business corporation save for the fact that its "profit" is paid to the Commonwealth, it would seem a simple task for the commission to assume financial responsibility for its negligent acts. The cost of purchasing insurance or of self-insuring to cover such contingencies can easily be absorbed by the millions of users of the turnpike facilities. This is an especially simple solution when it is realized that the turnpike commission has complete authority for setting the toll charges. It seems to me that none of the reasons advanced in years past for maintaining the sovereign immunity doctrine could possibly apply to the turnpike commission in light of these facts.

Therefore, again I am forced to dissent and in so doing hopefully I give comfort to those litigants who may try in the future to strike down a doctrine whose time has long since passed into the realm of ancient history.