James Leo HARRIS, Jr., Appellant.

v.

PENNSYLVANIA TURNPIKE COMMISSION.

No. 17397.

United States Court of Appeals Third Circuit.

Argued Feb. 19, 1969.

Decided May 6, 1969.

Howard R. Miller, Allentown, Pa., Peter Katevatis, Philadelphia, Pa. (Wallace C. Worth, Jr., Allentown, Pa., on the brief), for appellant.

Richard B. Wickersham, Metzger, Wickersham, Knauss & Erb, Harrisburg, Pa. (Richard H. Wix, Harrisburg, Pa., on the brief), for appellee.

Before VAN DUSEN, ALDISERT and STAHL, Circuit Judges.

## OPINION OF THE COURT

STAHL, Circuit Judge.

 Appellant brought the present action to recover damages for personal injuries. In his complaint he alleged that while operating a tractor-trailer for his employer along the Pennsylvania Turnpike the vehicle struck a large hole in the roadway, causing the truck to veer off the road and down an embankment, and resulting in personal injuries to him. Appellee Turnpike Commission was charged with negligently failing to maintain the roadway in a reasonably safe condition. Federal jurisdiction was based on diversity of citizenship.[1]

1. While not specifically asserting the Eleventh Amendment, appellee, in its brief, appears to be relying, in part, on the "sovereign immunity" of the Turnpike Commission. Appellant, in turn, asks us to resolve the Commission's immunity under the Eleventh Amendment. The reference to the Eleventh Amendment, which deals with suits against states in federal courts, puts the jurisdiction of the district court here in question by suggesting that the Turnpike Commission is the alter ego of the Commonwealth of Pennsylvania. Since neither a state nor its alter ego is a citizen for purposes of diversity jurisdiction, a suit between a state, or its alter

**1334**

The district court, on appellee's motion, dismissed the complaint on the ground that appellant failed to state a cause of action upon which relief could be granted. The basis for the dismissal was the Pennsylvania Supreme Court's decision in Rader v. Pennsylvania Turnpike Comm'n, 407 Pa. 609, 182 A.2d 199 (1962), which held that the "Turnpike Commission possesses the same immunity from liability in trespass actions arising out of the negligence of its agents and employees in the maintenance of the highway as does the Commonwealth." 182 A.2d at 205.

■■ In dismissing the complaint on the ground that the Turnpike Commission was immune from liability the district court acted correctly. Whether or not the Commission is immune from the tort liability posited here is a question

---

ego, and a citizen of another state is not a suit between citizens of different states and diversity jurisdiction does not exist. State Highway Comm'n v. Utah Constr. Co., 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262 (1929) ; Postal Telegraph Cable Co. v. Alabama, 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231 (1894).

Even if a state waives its Eleventh Amendment immunity to suit, as it has the power to do, Petty v. Tennessee-Missouri Bridge Comm'n, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959) ; Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), federal jurisdiction based on diversity will not lie because the state is not a citizen within the meaning of the Constitution or the acts of Congress. See Minnesota v. Northern Securities Co., 194 U.S. 48, 62–63, 24 S.Ct. 598, 48 L.Ed. 870 (1904) ; Missouri Pacific R. R. Co. v. Travelers Ins. Co., 281 F.Supp. 100 (E. D.La.1968) ; S. J. Groves & Sons Co. v. New Jersey Turnpike Authority, 268 F. Supp. 568, 571 (D.N.J.1967). "A state may waive its sovereign immunity but it cannot waive its lack of status as a citizen for the purpose of diversity jurisdiction * * *." Krisel v. Duran, 386 F. 2d 179, 181 (2d Cir. 1967), cert. denied, 390 U.S. 1042 (1968).

Whether or not an agency or instrumentality is the alter ego of the state and, therefore, immune from suit by virtue of the Eleventh Amendment is a question of federal, not state, law. Pennsylvania Turnpike Comm'n v. Welsh, 188 F.2d 447 (3d Cir. 1951) ; George A. Fuller Co. v. Coastal Plains, Inc., 290 F. Supp. 911, 915 (E.D.La.1968) ; S. J. Groves & Sons Co., supra 268 F.Supp. at 571. In Gerr v. Emrick, 283 F.2d 293 (3d Cir. 1960), cert. denied, 365 U.S. 817, 81 S.Ct. 698, 5 L.Ed.2d 695 (1961), we held that a suit against the Pennsylvania Turnpike Commission was not a suit against the Commonwealth and that the Commission was a citizen of a state for purposes of diversity jurisdic-

tion. Even when diversity jurisdiction lies, however, a state instrumentality will be immune from tort liability if such immunity is granted in the state courts. Gerr v. Emrick, supra; S. J. Groves & Sons Co., supra.

Because we dispose of the appeal here on the ground of immunity from tort liability, we do not decide the jurisdictional issue. Thus we need not grapple with the question of what effect, if any, the Pennsylvania Supreme Court's decision in Rader v. Pennsylvania Turnpike Comm'n, 407 Pa. 609, 182 A.2d 199 (1962), discussed infra, had on our "federal" determination in Gerr that the Commission is not the alter ego of the Commonwealth. The state decision may be relevant, though not binding: cf. Fabrizio & Martin, Inc. v. Board of Education, 290 F.Supp. 945, 947 (S.D.N.Y.1968). It is interesting to note that (1) the majority opinion in Rader implies that the Turnpike Commission has sovereign immunity and is the alter ego of the Commonwealth, although the Court frames the issue in the case as whether the Commission "is immune from liability in trespass," which is immunity from tort liability language rather than sovereign immunity from suit language, (2) the dissent by Justice Musmanno in Rader construes the majority to hold that the Turnpike Commission is the Commonwealth, 182 A.2d at 207–208, although in prior cases the Court had held otherwise, e. g., Gitlin v. Pennsylvania Turnpike Comm'n, 384 Pa. 326, 330, 121 A.2d 79, 81 (1956), and (3) in Commonwealth v. Merritt Chapman & Scott Corp., 432 Pa. 584, 248 A.2d 194 (1968), the Pennsylvania Supreme Court interprets Rader "to give the Turnpike Commission the same basic sovereign immunity protection as that enjoyed by the Commonwealth itself," and states that in Rader "we held that for sovereign immunity purposes, the Turnpike Commission should not be categorized with cities, towns, and other political subdivisions." 248 A.2d at 196 and n. 6.

of state law,[2] and under Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we are bound to apply the law as announced by the Pennsylvania Supreme Court in *Rader* notwithstanding [3] our prior decision in Gerr v. Emrick, 283 F.2d 293 (3d Cir. 1960), cert. denied, 365 U.S. 817, 81 S.Ct. 698, 5 L.Ed.2d 695 (1961), where we held, before the highest state court had spoken on the matter, that the Commission was subject to suit and to liability for negligence in the construction, operation and maintenance of the turnpike.

In his brief and at oral argument appellant also raised constitutional claims bottomed on the Fourteenth Amendment. In Ewalt v. Pennsylvania Turnpike Comm'n, 382 Pa. 529, 115 A.2d 729 (1955), the Pennsylvania Supreme Court held that an owner of real property could maintain a suit in equity and recover damages against the Turnpike Commission when dirt and debris from exposed cuts and fills for a new turnpike right-of-way were carried on to the owner's land. The asserted injury was found to be a continuing trespass arising out of the Commission's construction, operation and maintenance of the turnpike, and the Court held that the suit could be maintained by virtue of an express statutory provision authorizing such suits.[4] Appellant argues that to permit the maintenance of a trespass action against the Commission to recover for property damage caused by the construction, operation or maintenance of the turnpike, while, at the same time, denying relief to one who has suffered personal injuries as a result of the Commission's negligence in carrying out those same functions results in an arbitrary and unreasonable classification between property owners

2. Gerr v. Emrick, 283 F.2d 293 (3d Cir. 1960), cert. denied, 365 U.S. 817, 81 S.Ct. 698, 5 L.Ed.2d 695 (1961) ; Masse v. Pennsylvania Turnpike Comm'n, 163 F. Supp. 510, 511 (E.D.Pa.1958).

For a pre-*Rader* discussion of the "liability and suability" of turnpike agencies, pointing up the distinction between immunity from *suit* and immunity from *liability*, see Annot., 62 A.L.R.2d 1222 (1958).

3. See Burke v. Washington Hospital Center, 293 F.Supp. 1328, 1332 (D.D.C.1968), Doane v. Travelers Ins. Co., 266 F.Supp. 504, 505 (E.D.Pa.1966), and Rupe v. State Public School Building Authority, 245 F.Supp. 726 (W.D.Pa.1965), which arrive at the obvious conclusion that a pronouncement on the susbtantive law of the state by its highest court must be followed by a federal court in a diversity suit even though it is contrary to a prior educated guess by the same federal court as to what the state law *is*. *But cf.* Banaschoski v. General Deliveries, Inc., 226 F.Supp. 349 (W.D.Pa.1964), where the court permitted the Turnpike Commission to be impleaded as a third-party defendant in a suit brought by a Commission employee. The court held *Rader* did not bar the impleader because it was designed to determine the Commission's rights under the state workmen's compensation law.

4. The Pennsylvania Supreme Court was applying § 6(k) of the Western Pennsylvania Turnpike Extension Act of June 11, 1941, P.L. 101, Pa.Stat.Ann. tit. 36, § 654e(k), which provides that

all public or private property damaged or destroyed in carrying out the powers granted by this act [the construction, operation and maintenance of the Turnpike] shall be restored or repaired and placed in their original condition as nearly as practicable or adequate compensation made therefor out of funds provided under the authority of this act.

While the Court was very careful in *Ewalt* in denominating the recovery as one for a continuing trespass because problems of statutory construction may have precluded the claim as consequential damages under eminent domain, the State Supreme Court later recognized the true nature of the relief granted, making it markedly different from the kind of relief sought here. In Valley Forge Gardens, Inc. v. James D. Morrissey, Inc., 385 Pa. 477, 123 A.2d 888, 892 (1956), the Court said :

We held [in *Ewalt*] that the Commission was liable for the proven consequential *damages* because the * * * [applicable act] expressly charged the Commission with the payment of compensation for *property damaged or destroyed* by the construction, operation and maintenance of the turnpike.

and travelers upon the turnpike and denies to the latter class the equal protection of the laws.

■■ Appellant contends that while a state may effect a partial waiver of immunity from tort liability, it may not waive that immunity in such a way as to treat differently persons similarly situated.[5] Assuming this to be the rule, we do not find the partial waiver here, in effect a form of classification, to be unreasonable. While the precise question presented here does not seem to have arisen previously,[6] we note that the equal protection clause "is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective," McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961), and that "if the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law." Allied Stores, Inc. v. Bowers, 358 U.S. 522, 527, 79 S.Ct. 437, 441, 3 L.Ed.2d 480 (1959), quoting from Brown-Forman Co. v. Kentucky, 217 U.S. 563, 573, 30 S.Ct. 578, 54 L.Ed. 883 (1910). Without attempting to enumerate all of the possible reasons or policies which may have prompted the Commonwealth to follow the course indicated by *Ewalt* and *Rader,* we think it clear that the classification complained of is not an unreasonable one.

Appellant also makes a due process argument, contending that the application of the turnpike statute in question so as to deny him any redress for the personal injuries received as a result of the negligence of the Pennsylvania Turnpike Commission deprives him of "that fundamental fairness and justice required under the due process clause." Brief, p. 12.

■ In Palmer v. Ohio, 248 U.S. 32, 39 S.Ct. 16, 63 L.Ed. 108 (1918), plaintiffs sued the State of Ohio for property damage occasioned by the elevation of a spillway of a state-maintained dam. The state courts dismissed the suit on the ground that the state had not consented to be sued, and plaintiffs claimed that in denying them a right to sue, the state had deprived them of due process of law in violation of the Fourteenth Amendment. The case was dismissed because no federal question was presented, the Supreme Court noting that "the right of individuals to sue a State, in either a federal or a state court, cannot be derived from the Constitution or laws of the United States. It can come only from the consent of the State." *Id.* at 34, 39 S.Ct. at 17. We believe this rule applies whether the Turnpike Commission is immune from suit under the concept of sovereign immunity or whether it is immune from tort liability, under the law of the state, as an instrumentality of the state.[7]

To appellant's plea that we re-examine the doctrine of governmental immunity from tort liability in light of Pennsylvania's abolition of charitable immunity in Flagiello v. Pennsylvania Hospital, 417 Pa. 486, 208 A.2d 193 (1965), we can

---

5. *Cf.* Markham v. Newport News, 292 F.2d 711 (4th Cir. 1961).

6. In Marchant v. Pennsylvania R.R. Co., 153 U.S. 380, 14 S.Ct. 894, 38 L.Ed. 751 (1894), the Court held that a legislative grant of the right to compensation to owners of real property damaged by the defendant railroad in the exercise of the power of eminent domain, and a denial of the right to compensation for consequential damages to real property caused by construction of the railroad on adjacent property, was not a denial of the equal protection of the laws.

For a comprehensive treatment of the field, which does not, however, advert directly to the kind of issue involved here, see Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065 (1969).

7. In Beers v. Arkansas, 61 U.S. (20 How.) 527, 529, 15 L.Ed. 991 (1857), the Court said that as the permission by a sovereign to be sued "is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, * * *"

only repeat what we said in Jamison v. Pittsburgh, 360 F.2d 162, 163 (1966):

> Such a course may be desirable. But it is not now sufficiently foreshadowed in Pennsylvania decisions to justify a federal court applying Pennsylvania law in a diversity case in holding that Pennsylvania law subjects municipalities [here the Turnpike Commission] to liability * * *.[8]

The order of the district court to dismiss the complaint will be affirmed.

---

8. In fact, the Pennsylvania Supreme Court has very recently reaffirmed the holding in *Rader* in Thomas v. Baird, 433 Pa. 482, 252 A.2d 653 (April 23, 1969), Justice Roberts dissenting. In the majority opinion, Chief Justice Bell, who was the author of *Rader* as well, said:

> * * * Moreover, *Rader* has been cited with approval by our Court several times, and its rationale applied to other factual situations.
> For example, we granted sovereign immunity to the General State Authority

(Roney v. General State Authority, 413 Pa. 218, 219, 196 A.2d 349); to the Delaware River Port Authority (Anderson Appeal, 408 Pa. 179, 187, 182 A. 2d 514); and to the State Highway and Bridge Authority (Eidemiller, Inc. v. State Highway and Bridge Authority, 408 Pa. 195, 182 A.2d 911).
*Rader* is firmly established as the law of Pennsylvania and no convincing reasons have been advanced for overruling it or changing the law. 433 Pa. at 484, 252 A.2d at 654.