Lovrinoff, et al. *v.* Pennsylvania Turnpike Commission.
Madacsi *v.* Pennsylvania Turnpike Commission.
Kunze, Jr., et al. *v.* Pennsylvania Turnpike Commission.

Argued June 1, 1971, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

Dom A. Meffe, with him William J. Ober, Meffe &
Ober, for appellants.

Rabe F. March, III, with him H. Reginald Belden,
Stewart, Belden, Sensenich and Herrington, for appel-
lee.

OPINION BY PRESIDENT JUDGE BOWMAN, August 30,
1971:

As recently as April 1969, the Supreme Court of
Pennsylvania in Thomas v. Baird, 433 Pa. 482, 252 A.
2d 653 (1969) reaffirmed its decision (Justice ROBERTS
dissenting) in Rader v. Pennsylvania Turnpike Com-
mission, 407 Pa. 609, 182 A. 2d 199 (1962) which held
that The Pennsylvania Turnpike Commission, as an in-
strumentality of the Commonwealth engaged in a gov-
ernmental function, is immune from liability for the
negligence of its officers and employees under the doc-
trine of sovereign immunity.

In these consolidated appeals, the appellants readily
acknowledge that these opinions control the instant
cases but urge that we either overturn them or ignore
them and reverse the lower court which in turn con-
sidered itself bound by the Supreme Court pronounce-
ments in dismissing plaintiffs' complaints.

In urging us to do so, appellants forcefully argue
that the doctrine of sovereign immunity as applied to
The Pennsylvania Turnpike Commission is outdated,
outmoded and not representative of the modern trend
in the law to more narrowly restrict its application,
particularly as to instrumentalities such as this Com-
mission. Appellants do not, however, suggest by what

authority we are to ignore or overturn the law as pronounced by the Supreme Court.

Perhaps the explanation for this failure may be found in the fact that these appeals were originally taken to the Supreme Court and transferred to this Court by its order dated March 5, 1971, pursuant to Section 507(b) of the Appellate Court Jurisdiction Act of July 31, 1970, P. L.    , Act No. 223, 17 P.S. 211.507.

Had the Supreme Court heard these appeals it would have been entirely proper for it, as the supreme judicial body of the Commonwealth, to reconsider its prior decisions on this subject and overrule them if it saw fit to do so. The transfer of these appeals, however, lends to this Court no such power or authority nor does the genesis of this Court afford it any such power or authority.

Section 4 of Article V of the 1968 Constitution of Pennsylvania created the Commonwealth Court as a constitutional court of State-wide jurisdiction with its subject matter jurisdiction to be as provided by law. Section 2 of this same Article, however, recognizes the historical posture of the Supreme Court as the "highest court of this Commonwealth" in which ". . . shall be reposed the supreme judicial power of the Commonwealth".

Although the Appellate Court Jurisdiction Act, *supra,* has conferred upon the Commonwealth Court a wide scope of jurisdiction and has provided that final orders within its appellate jurisdiction are reviewable only on allowance of appeal granted by the Supreme Court (Section 204), these constitutional and statutory provisions afford no power or authority in this Court to ignore or overturn prior pronouncements of the highest court of the Commonwealth which are controlling of the subject at hand.

As our judicial system was structured prior to the 1968 Pennsylvania Constitution, it was well settled that

the decisions of the Supreme Court were regarded as the law to be followed by inferior courts whatever the view of the latter may be as to their wisdom or justness. *Commonwealth v. Provident Trust Company of Philadelphia,* 319 Pa. 385, 180 A. 16 (1935); *Beckham v. Travelers Insurance Company,* 424 Pa. 107, 225 A. 2d 532 (1967), reversing the Superior Court, 206 Pa. Superior Ct. 488, 214 A. 2d 299 (1965) and overruling prior Supreme Court decisions which the Superior Court had held as binding upon it.[1]

As our judicial system has been restructured by the 1968 Pennsylvania Constitution and the implementing Appellate Court Jurisdiction Act, *supra,* we are unable to discern in these provisions any expressed intent upon the part of the electorate or the General Assembly to depart from this well established rule which lends uniformity and certainty to the law but allows sufficient flexibility for change by the highest court, but only the highest court, in our judicial system.

The able opinion of Judge KEIM for the Court of Common Pleas of Westmoreland County sets forth and discusses the pleadings in these cases leading to the granting of defendant's motions for judgment on the pleadings. There is no need to review them in light of the narrow issue before us in these appeals.

Judge KEIM said: "Even though this Court might see the logic of any argument advanced by counsel for plaintiffs as to the causes of actions stated against the

---

[1] As an exception to the rule the Superior Court in *Manley v. Manley,* 193 Pa. Superior Ct. 252, 164 A. 2d 113 (1960) declared it would ignore an 1847 decision of the Supreme Court holding insanity of wife not a defense in suit for divorce on ground of adultery under circumstances where the Superior Court had jurisdiction over divorce appeals for 65 years during which time the Supreme Court made no reference in any divorce case to the ancient ruling. In the instant cases, such an exception is not applicable as the Supreme Court has judicially reviewed this subject only two years ago.

Pennsylvania Turnpike Commission, the principle of *stare decisis* compels us to an opposite conclusion."[2]

Orders affirmed.[3]

---

DISSENTING OPINION BY JUDGE CRUMLISH, JR., August 30, 1971:

I dissent. Today the majority holds that this Court is without the authority to consider for itself the merits of this case because a recent Pennsylvania Supreme Court decision upheld the doctrine of sovereign immunity under similar factual circumstances. In doing so, the majority takes an unwarranted narrow position with respect to the responsibilities of intermediate appellate courts in the Commonwealth's judicial framework. The Superior Court also bows to outmoded tradition. *Beckham v. Travelers Insurance Company*, 206 Pa. Superior Ct. 488, 214 A. 2d 299 (1965). For my part, I cannot unearth any viable reason aside from a display of fealty to the omnipotence of *stare decisis* for our failure to recognize the simple facts of life.

This Court has felt so constrained by the Supreme Court's pronouncements that it is unwilling to discuss the merits. By deciding as it does today, this Court merely acts as a conduit to the Supreme Court. This is not its function as commanded by the citizens and ultimately by legislative enactment. It seems to me that in our functioning as intermediate appellate judges, we have a duty to present our considered reasoning on the merits of this case and in doing so aid the Supreme Court in its final determination. Actual-

---

[2] The binding effect of decisions of the highest judicial tribunal upon inferior tribunals is frequently considered to be within the general doctrine of *stare decisis*.

[3] Having affirmed the lower court and thus sustaining the position of the Commission, we do not deem it necessary to pass upon its motions to quash the appeals.

ly, the Superior Court assumed this posture in *Beckham*.

I cannot understand why this Court or the Superior Court would be enslaved so that they must ignore consideration of the merits of legal issues simply because of prior decisions of courts constituted by humans whose thinking and lives change with the times. The Supreme Court will grant allocatur and reverse us if it disagrees. In expressing our concept of the law, we are not usurping its right as the "supreme judicial power of the Commonwealth". It would seem appropriate and beneficial that a Supreme Court reconsider and reaffirm its position when the majority of the judges on an appellate bench have found reason to differ with that position.

This Court, while probably influenced by the reasoning of the Supreme Court's prior decisions, should not have refused to consider for itself the merits of the case.

In considering the substantive question raised in this appeal, I am moved by the most persuasive dissent of Justice ROBERTS in *Thomas v. Baird,* 433 Pa. 482, 252 A. 2d 653 (1969). Many other jurisdictions have abrogated the doctrine of sovereign immunity and the list grows longer each year. "It can be said with all due respect to those who originally promulgated the rule years ago that the doctrine is 'no longer just, reasonable nor defensible' and that the 'reasons underlying the traditional wide-sweeping rule of sovereign immunity have virtually disappeared in modern society.'" 433 Pa. at 486. Pennsylvania has modernized its legal structure, now it should modernize its legal tenets.

But even if our courts should decide to retain generally the doctrine of sovereign immunity, the defendant in this action, the Pennsylvania Turnpike Commission, should not be the beneficiary of this protective de-

vice. It is not in reality a part of the sovereign structure of this state. As noted by Justice ROBERTS in *Thomas*: "[h]ere we have a turnpike authority which operates almost five hundred miles of super highway over which some forty-eight million vehicles travel each year. In its most recently completed fiscal year [1968] the Pennsylvania Turnpike Commission took in almost $56,000,000 in operating revenues. Existing as it does like any other business corporation save for the fact that its 'profit' is paid to the Commonwealth, it would seem a simple task for the commission to assume financial responsibility for its negligent acts. The cost of purchasing insurance or of self-insuring to cover such contingencies can easily be absorbed by the millions of users of the turnpike facilities. This is an especially simple solution when it is realized that the turnpike commission has complete authority for setting the toll charges. It seems to me that none of the reasons advanced in years past for maintaining the sovereign immunity doctrine could possibly apply to the turnpike commission in light of these facts." 433 Pa. at 486-87. See also the dissenting opinion of the late Justice MUS-MANNO in *Rader v. Pennsylvania Turnpike Commission*, 407 Pa. 609, 182 A. 2d 199 (1962). I would reverse.

Judge MANDERINO joins in this dissent.